JAMES W. WILSON and others v. THE WESTERN NORTH CAR-
OLINA LAND COMPANY.

*Contract--Mistake--Bona Fide Purchaser without Notice--Entry
and Grant -- Non-Resident--Practice -- Violation of Restraining
Order.*

1. To justify a Court in setting aside a contract on the ground of mistake,
   it is essential to show either a mistake of both parties or the mistake of
   one with the fraudulent concealment of the other.

2. To the general rule, that an act done or contract made under mistake
   or ignorance of a material fact is voidable in equity, there are certain
   exceptions, viz :

   (1.) The material fact must be such as the complaining party could not
   by reasonable diligence obtain a knowledge of, when he was put upon
   inquiry.

   (2 ) Where the means of knowledge are alike open to both parties, and
   where each is presumed to exercise his own judgment in regard to ex-
   trinsic matters.

   (3.) Where the facts are equally known to both parties; or where each
   has equal and adequate means of information ; or the facts are doubt-
   ful from their own nature, if the party has acted in good faith.

3. Where a *bona fide* purchaser for value and without notice has acquired
   the legal title to land, equity will not interfere to deprive him of his
   legal advantage ; *Therefore*, when A., in whose name certain entries
   of land had been made for the benefit of others, conveyed his interest
   in the same to B, who purchased for value and without notice, and B
   took out grants in A.'s name, who thereafter executed to B a quit-claim
   deed for the land ; *Held*, in an action by A and the parties for whose
   benefit the entry in A's name had been made, to set aside his convey-
   ance to B, that B had acquired a good title.

4. An entry in the name or for the benefit of a non-resident is void. And
   a grant issued pursuant to such entry to such non-resident is voidable
   at the suit of the State.

5. A grant taken out upon an entry, which has lapsed by the efflux of
   time, is valid. A grant, taken out upon an entry made by a non-resi-
   dent, by a person capable of taking and holding under the laws of the
   State, is valid.

6. A plaintiff claiming under void entries of land cannot be aided by the defective title of defendants.

7. One who executes a deed despite a restraining order enjoining him from so doing, is estopped from invalidating the deed for that cause.

(*Crowder* v. *Langdon*, 3 Ire. Eq. 476 ; *King* v. *Trice*, *Ibid*, 568 ; *Crump* v. *Black*, 6 Ire. Eq. 321 ; *Taylor* v. *Kelly*, 3 Jones Eq. 240 ; *Plemmons* v. *Fore*, 2 Ire. Eq. 312 ; *Horton* v. *Cook*, 1 Jones Eq. 270, cited and approved.)

CIVIL ACTION for the Cancellation of a Deed and other relief, tried at Spring Term, 1875, of CALDWELL Superior Court, before *Mitchell, J.*

The plaintiffs are J. W. Wilson, G. N. Folk, J. C. Tate, H. F. Bond, W. D. Sprague and E. M. Davis.

The defendants are the Western North Carolina Land Company and J. G. Ralston its President.

The plaintiffs alleged that on March 5th, 1869, C. A. Cilley entered a large body of vacant land in Caldwell County known as the Wilson Creek lands, and that he afterwards for valuable consideration sold to E. M. Davis, of Philadelphia, his interest in such entries. No grants were taken out upon these entries and the same lapsed. On January 8th, 1872, said Cilley made other entries of the same land in the name of Geo. N. Folk, for the purpose of carrying out his contract with Davis. On July 4th, 1874, the plaintiff Junius C. Tate entered the same lands in his own name. Thereafter, Tate assigned his interest in the entries to the plaintiffs Henry F. Bond and Wm. D. Sprague. A controversy having arisen between Davis and Bond & Sprague, a compromise was made, whereby grants were to be taken out and the title to the lands held by a trustee who was to sell the lands and divide the proceeds of sale between Davis and Bond & Sprague. This compromise was approved by said Folk, who agreed in writing to its stipulations. On March 10th, 1872, E. T. Mockridge procured entries of certain lands in said Caldwell County to be made in the name of said

Folk, which lands adjoined the lands entered as aforesaid.

On February 16th, 1874, the defendant company, consisting of said Mockridge and others, was incorporated by the General Assembly, and the defendant Ralston became President thereof. On June 12th, 1873, said Wm. D. Sprague made entries of the lands entered by said Mockridge on March 10th, 1872.

That on October 25th, 1874, W. W. Flemming as agent and attorney for defendant company without the knowledge or consent of the plaintiffs or any of them procured the entry-taker of said County to give him warrants directing the County Surveyor to lay off and survey for said Folk the lands covered by said entries, and placed the same in the hands of said County Surveyor. That by a combination between the Surveyor, Flemming and Mockridge, the lands were surveyed secretly and without the knowledge of plaintiffs. That said survey was finished on December 27th, 1874, the Surveyor adopting in order to have the same completed by December 31st, certain surveys theretofore made by him at the instance of plaintiffs. That while said survey was in progress, the plaintiff Folk gave to said Flemming as agent a paper writing authorizing him to take out in his name grants from the State for any lands in Caldwell County, but that said Folk only intended that such authority should apply to the lands entered on March 10th, 1872, and not to the Wilson Creek lands, and that the defendants were aware of such intention. That on December 16th, 1874, the defendant company by presenting said paper writing to the Secretary of State and upon payment of the necessary fees and charges, obtained grants for the lands in said Caldwell County, including the Wilson Creek lands, and placed the same in the hands of the Register of Caldwell County for registration.

That prior to December 31st, 1874, a civil action had been commenced in Caldwell Superior Court by said Tate against

said Davis, Mockridge and Folk in which a restraining order had been granted, enjoining said Folk from conveying the Wilson Creek lands to either Davis or Mockridge. On December 30th, 1874, said Flemming handed to said Folk for his signature, a quit claim deed to said Ralston as President of defendant company, of a large quantity of land in Caldwell County, reciting a consideration of eight thousand dollars, and only describing the land by the numbers of the grants conveying the same to said Folk. That said deed was without consideration. That said Folk carried the deed to his house, had it copied omitting the consideration, signed it and placed it in an envelope directed to Mockridge, and was about to send it to the post office when Mockridge called at his house. That Folk thereupon called his attention to the aforesaid restraining order, but stated that in his opinion the order was inoperative, as it seemed based upon the belief that he intended to convey the Wilson Creek lands— that Mockridge did not undeceive said Folk, but strengthened the impression that the deed did not cover the Wilson Creek lands, and Folk executed and delivered the same to him—that said Folk remained in ignorance of the fact that the quit claim deed covered the Wilson Creek lands until January 7th, 1875, when he became aware of it from information received of the number of grants in his name in the Register's hands; and that he thereupon conveyed the said Wilson Creek lands to the plaintiff, Jas. W. Wilson, in order that the compromise between Davis and Bond & Sprague might be carried into effect. Plaintiffs asked that the deed obtained from Folk by Mockridge might be cancelled, and for such other relief as they might be entitled to.

The defendants answered, denying the material portions of the complaint.

It was admitted that the defendants had no notice of the equities of the plaintiffs.

The following are the issues submitted to the jury and the findings thereon ;

1st. Did C. A. Cilley make the entries in the Spring of 1869 for his own use and benefit, as stated in the complaint? Answer; Yes.

2nd. Were they afterwards sold by him to E. M. Davis under the contract, as stated in the complaint? Answer; Yes.

3rd. Were they afterwards entered by said Cilley, January 8th, 1872, in the name of G. N. Folk, to enable said Cilley to carry out said contract with Davis, as stated in the complaint? Answer; Yes.

4th. Were the lands described in said complaint as entered by said Cilley, March 5th, 1869 and afterwards entered in the name of said Folk January 8th, 1872, ever entered by E. T. Mockridge or by any one else for his use and benefit? Answer; No.

5th. Did said Folk assign and transfer said entries to E. M. Davis, as stated in the complaint? Answer; Yes.

6th. Did said Folk at the time he conveyed to J. G. Ralston, President, believe that he was conveying such entries only as were made by said Mockridge in the name of said Folk? Answer; Yes.

7th. Did the said Mockridge at the time he received the deed from said Folk know that it embraced entries which were not made for his use and benefit? Answer; No.

8th. At the time said Mockridge received said deed from said Folk, was there an injunction issued restraining said Folk from conveying and said Mockridge from receiving a conveyance of said lands? Answer; Yes.

9th. Did said Mockridge represent to said Folk that the deed only embraced lands which had been entered for his use, and to which he was entitled? Answer; No.

10th. Did he represent to said Folk that the said injunc-

tion did not extend to the lands embraced in said deed?
Answer; No.

11th. Was the deed made by said Folk to said Mockridge
June 16th, 1874, only intended to convey the entries made
in said Folk's name for Mockridge? 'Answer; Yes.

12th. Were the lands entered on the 8th January, 1872,
in the name of G. N. Folk, entered for the benefit of E. T.
Mockridge or for the benefit of E. M. Davis? Answer; For
Davis.

13th. Did E. T. Mockridge pay to the Entry-taker of Cald-
well County his fees for the entries made on January 8th,.
1872, in the name of G. N. Folk? Answer; No.

14th. Did E. M. Davis pay to the Entry-taker of Cald-
well County his fees for the entries made on January 8th,
1872, in the name of G. N. Folk? Answer; Yes.

15th. Has E. M. Davis or any one of the other plaintiffs
ever paid to the State of North Carolina any money for
the lands included in the entries of Jan. 8th, 1872? An-
swer; No.

16th. On Jan. 4th, 1875, the date of the execution of the
deed from said Folk to said Mockridge, did said Mockridge
insist that the lands described as the Wilson Creek lands,
which were entered January 8th, 1872, were the lands which
he claimed? Answer; No.

17th. Did Folk represent to said Mockridge that the in-
junction did not extend to the lands embraced in the deed?
Answer; Yes.

18th. Was the deed executed by Folk to Mockridge on
June 16th, 1874, conveying the entries of all the lands by
him in Caldwell County, procured by fraud? Answer; No.

19th. Was the deed executed by Folk to the Western
N. C. Land Co. on Jan. 4th, 1875, conveying the lands men-
tioned and described as the Wilson Creek lands, procured
by fraud? Answer; No.

His Honor gave judgment against the plaintiffs for costs, from which they appealed.

*Messrs. Armfield & Folk*, for plaintiffs.
*Messrs. W. W. Flemming* and *W. N. H. Smith*, for defendants.

BYNUM J. The plaintiffs base their claim to relief upon two propositions; first, that the defendants procured the execution of the deed from Mr. Folk by fraud; and second, that it was executed by mutual mistake of facts between the parties to it. They allege that the defendants, by the concealment of facts within their knowledge and by misrepresentation, induced Mr. Folk to execute a deed to one body of land, when he supposed and was fraudulently induced to believe that he was conveying another and distinct one. They also allege that if there was no fraud in the inducement to the execution of the deed, there was such a mutual mistake of fact in respect to the land conveyed and that intended to be conveyed, as will entitle them to the relief they seek.

Without stopping to comment on the inconsistency of the two allegations, one of fraud on the part of the defendant and the other of mutual mistake of the parties which rebuts the idea of fraud, it is enough to say, that the charge of fraud in procuring the execution of the deed is expressly denied in the answer and negatived by the finding of the jury, who upon issues submitted to them for their verdict declare that neither the deed of June 16th, 1874, by which Mr. Folk assigned the entries of the land to Mockridge, nor the deed of January 4th, 1875, by which he conveyed the land itself to the defendant, was procured by fraud.

The question of fraud being thus out of the way, the plaintiffs' right to relief must turn upon the single question,— whether the impeached conveyance was executed in such a

mutual mistake of facts in respect to the body of land in-
tended to be conveyed, as a Court of Equity will take cog-
nizance of. The general rule in this class of cases is, that an act
done or contract made under a mistake or ignorance of a
material fact is voidable and relievable in equity. But the
general rule has many qualifications. For instance, the ma-
terial fact must be such as the complaining party could not
by reasonable diligence obtain a knowledge of when he was
put upon inquiry. For if by such reasonable diligence he
could have obtained knowledge of the fact, equity will not
relieve him since that would encourage culpable negligence.
So where the means of knowledge are alike open to both
parties, and where each is presumed to exercise his own
judgment in regard to extrinsic matters, equity will not re-
lieve. Nor again will equity interpose where the facts are
equally known to both parties, or where each has equal and
adequate means of information, or the facts are doubtful
from their own nature, if the party has acted in good faith.
It is upon this ground that if A knowing that there is a
mine in the land of B of which he knows that B is ignorant,
should buy the land without disclosing the fact to B, for a
price in which the mine is not taken into consideration, B
would not be entitled to relief from the contract, because A
as the buyer is not obliged from the nature of the contract
to make the discovery.

There must always be shown either the mistake of both
parties or the mistake of one with the fraudulent conceal-
ment of the other, to justify a Court of Equity in reforming
a contract. *Wright* v. *Goff*, 22 Beavan, 207; 26 Beavan, 454;
1 Story Eq., § § 146–53.; *Crowder* v. *Langdon*, 3 Ire. Eq. 476.
In order to set aside such a transaction, it is essential not
only that an advantage should be taken, but there must be
some obligation in the party to make the discovery; not an
obligation in point of morals only, but of legal duty; the
policy of equity being to afford relief to the vigilant and put

all parties upon the exercise of the most seaching diligence. This is peculiarly so in cases of written agreements,—a solemn deed as in this case. . The whole sense of the parties is presumed to be comprised in such an instrument, and it is against the policy of the law to allow parol evidence to add to or vary it as a general rule. But if the proofs are doubtful and unsatisfactory and the mistake is not made entirely plain, relief will be withheld upon the ground that the written paper must be treated as the full and correct expression of the intent, until the contrary is established beyond reasonable controversy. 1 Bro. Ch. R. 338, 341; *Woolam* v. *Hearn*, 7 Ves. 217; *Davis* v. *Symonds*, 1 Cox, 404; 1 Story Eq. § 153.

In this case it is the vendor who seeks to avoid his own deed upon the ground of mistake. We have already seen that he must clearly show either a mistake of both parties, or the mistake of one with the fraudulent concealment of the other to justify the interposition of a Court of Equity. Now it is expressly denied by the defendants that there was any mistake on their part as to the lands they purchased. In fact the complaint does not allege a mistake on their part; so far from it, the plaintiffs charge that the defendants made no mistake, but knowingly purchased the Wilson Creek lands purposely concealing that fact from the plaintiffs, by pretending that the deed taken by them was for the Yadkin lands. All question of a mutuality of mistake is thus effectively disposed of, as we have before shown was all question of fraud on the part of Mockridge, the vendee. There was no mistake and no fraud on the part of the purchaser. But the jury have found by their verdict that Mr. Folk, the vendor, did convey to the defendants the Wilson Creek lands, when he intended to convey and supposed he had conveyed the Yadkin River lands. That was *his* mistake. But it is not every mistake of a vendor however material or however fully established by proof that will evoke

the interference of the Court of Equity. There must be some concealment or other ingredient in the nature of fraud on the part of the purchaser. Here none is found.

Relief is given only to the vigilant, and not to the negligent or those who being put upon inquiry and having equal or superior means of information have chosen to omit all inquiry which would have enabled them to avoid, obviate, or correct mistakes. Who is in fault here ? Mr. Folk did *not* own the Yadkin River lands, and both he and Mockridge knew it; he did not convey these lands. He *did* own the Wilson Creek lands, and both he and Mockridge knew that; he did convey these lands. Had he conveyed the lands to which he had no title, it would have been evidence of mistake ; but as he conveyed only those he could lawfully convey, the reasonable presumption from that fact is the other way. The entries of those lands were made in his name, and he by deed assigned them to the defendants in June, 1874. Six months later—in January, 1875—and after grants had been taken out in his name on these entries, he by another deed conveyed the lands themselves to the parties to whom he had previously assigned the entries. Now it is this vendor who complains and asks for equity in the face of his solemn deed. That he executed the deed in mistake is found by the jury ; but a mistake cannot afford a foundation for relief where there has been such unquestionable negligence, without the violation of every principle governing that jurisdiction. The plaintiffs are therefore not entitled to relief on the ground of fraud or mistake.

But it is alleged that the defendants purchased with and are affected by notice of the prior rights and equities of the plaintiffs, and upon that question their case is this: In 1869, Mr. Cilley in pursuance of the law (Bat. Rev. ch. 41) making all vacant and unappropriated lands belonging to the State subject to entry and grant by any citizen of the State, made entries of the lands in dispute, and in 1870, assigned

his entries to one Davis a citizen of Pennsylvania, contracting to take out grants for the lands and convey to him. These entries were allowed to lapse, and in 1872, Cilley re-entered the same lands in the name of G. N. Folk, but for the purpose of carrying out his contract with Davis.

In July, 1874, Junius C. Tate made entries covering the the same lands, which entries he assigned to Sprague & Bond. Thereupon a dispute arose between Davis claiming under the Folk entries, and Sprague & Bond claiming under the Tate entries; neither party having perfected their entries by taking out grants from the State. This dispute was compromised between the parties by the agreement that grants were to be taken out under the Tate entries in the name of a trustee by whom the lands were to be sold, and the proceeds equally divided between Davis and Sprague & Bond. This compromise was approved and endorsed by Mr. Folk who had assigned his entries to Davis.

In October, 1874, Mr. Flemming as the agent of the defendants procured warrants of survey from the Entry-taker, and had the Wilson Creek lands surveyed in the name of Mr. Folk. Pending this survey, Folk gave Flemming a paper writing authorizing him to take out and obtain in his name grants from the State for any lands entered in his name in the County of Caldwell. Accordingly in December, 1874, Flemming presented this power of attorney to the Secretary of State at Raleigh, and obtained from the State, grants in the name of Folk for all the lands in controversy by paying the price of the lands and the fees. Afterwards on the 4th of January, 1875, by a deed duly executed by himself and wife, Folk conveyed the lands thus granted to Mockridge for the Western North Carolina Land Company, of which Flemming was the agent and attorney.

Upon this state of facts it is clear that the grants from the State conveyed the legal title of the Wilson Creek lands to Mr. Folk, and it is equally clear that his deed conveyed

the legal title to the defendants. Is that title encumbered by any equity in favor of the plaintiffs ?—Certainly not ; for the defendants in their answer deny any notice of the several transactions between the other parties in respect of the entries and the transfers of them from one to the other, and there was no proof or finding by the jury that the defendants had any such notice. According to the case, they had no knowledge and no reason to believe that these lands were originally entered by Cilley for Davis, or afterwards by Tate for Sprague & Bond, or that Folk had assigned his entries for their benefit. The entries under which the plaintiffs seek relief were in the name of Folk, and the grants were issued to him. Flemming and Mockridge knew him alone in their negotiations for the purchase of the land, as he alone was known on the books of the Entry-taker, and did not impart to the defendants any knowledge of his relations with the plaintiffs in respect to these lands.

Where a vendor contracts to sell land to one person and afterwards sells the same lands to another who purchases without notice, the latter acquires a good title. *Taylor* v. *Kelly*, 3 Jones Eq. 240. Even where both parties are equally entitled to consideration, equity does not aid either, but leaves the matter to depend upon the legal title. Thus, where a *bona fide* purchaser for a valuable consideration and without notice, has acquired the legal title, a Court of Equity will not interfere to deprive him of his legal advantage. *Crump* v. *Black*, 6 Ire. Eq. 321 ; *King* v. *Trice*, 3 Ire. Eq. 568.

Whatever remedy the plaintiffs may have against Folk, in respect to these defendants they cannot be in a better position than a purchaser who has a bond for title from the vendor, and afterwards for value sells and conveys to another without notice. But had these plaintiffs even an equity which they could enforce against Folk ? An entry of land only creates an equity entitling the party to a grant where the purchase money is paid to the State within the

time prescribed by statute, which is on or before the 31st of December, the second year after the entry. Rev. Code, ch. 42, § 8 ; *Plemmons* v. *Fore*, 2 Ire. Eq. 312.  Folk's entries of 1872, therefore, lapsed on the 31st of December, 1873, and with this lapse expired the plaintiffs' equity, unless the entries were kept alive by statutes extending the time for taking out grants.  There may be such statutes, but we have not examined, because the question does not affect the rights of the defendants in this action ; it only affects the rights of Folk and the other plaintiffs as between themselves.

Again it appears in the pleadings, and is not denied, that Davis, for whom the entries of 1872 were made, and under which the plaintiffs claim, was not a citizen of the State, and had expressed no intention to become a citizen and resident when the entries were made for him.  As to him the lands were not subject to entry, and all entries in his name and for his benefit were void.  Rev. Code, ch. 42, § 1 ; Bat. Rev. ch. 41, § 1 ; Acts 1869-'70, ch. 19.  Had grants been issued to Davis pursuant to such entries, they would have been voidable at the suit of the State ; but he having entries only which were void as to himself, was not entitled to grants from the State, and the other plaintiffs claiming under these entries with notice can have no better standing in this Court.

But it is said in reply, that the defendants claim under the same entries as the plaintiffs do, and that their title is therefore equally defective.  Admitting that to be so, the defective title of the defendants cannot aid that of the plaintiffs.  Claiming under void entries and nothing more, the plaintiffs are in no condition to impeach a defective or voidable title of the defendants.  But the defendants have more than these entries ; they have the grants from the State and also a deed which conveys the legal title, which is good until avoided by the State for cause, or by a party having a bet-

ter title or superior equity. Because a grant is taken out upon an entry which has lapsed by the efflux of time, it does not follow that it is void. On the contrary it is valid. *Horton* v. *Cook*, 1 Jones Eq. 270. So if a grant is issued upon an entry which is void because of the non-citizenship of the enterer (as Davis here) the grant itself is nevertheless valid and passes the title, if the grantee is a person capable of taking and holding by the laws of the State.

The defendant, The Western North Carolina Land Company, was made a corporation by an Act of the Legislature, ratified the 16th of February, 1874, and is empowered by the Act to take and hold lands. As the grants were issued and the deed was executed to or for the benefit of this corporation on the 4th of January, 1875, the corporation was at that time as capable of taking and holding lands as any citizen of the State.

We have put no stress upon the Tate entries of July, 1874, because the plaintiffs on the 9th of January, 1875, but subsequent to the execution of the deed to the defendants, obtained a deed from Mr. Folk for the same lands before conveyed by him to the defendants, and now claim the lands by virtue of the grants issued to Mr. Folk on his entries of 1872; and this action is framed upon the idea that if the defendants' deed can be avoided, the plaintiffs can hold the lands under this subsequent deed. The rights if any acquired under the Tate entries, have not been and cannot be properly insisted on in this action. It will be sufficient to say, however, that the same principles of equity apply to the Tate entries as to the Cilley and Davis entries, towit,—that as the defendants are purchasers for value and without notice their title is not affected by these entries.

The last position of the plaintiffs is, that the deed to the defendants is void, because at the time of its execution by Mr. Folk, he had been enjoined by a restraining order at the suit of Tate and others against Folk and others from con-

veying the Wilson Creek lands to the defendants or others. In this view the case is this: That Mr. Folk, the principal defendant in that action, is the plaintiff in this, and now claims that although he conveyed the lands in the teeth of the restraining order, he can insist that his own voluntary deed is void. Disobedience to the restraining order of the Court is a matter between him and the Court, but he himself is estopped from invalidating his own deed for that cause. If at the time of the execution of the deed to the defendants, they were entitled to the conveyance under their previous contract of purchase, and by reason of having paid the purchase money to the State and taken out grants in the name of Mr. Folk, but in fact for themselves, the conveyance was rightful, and being also without notice of the restraining order, was not affected by it. Such an effect must be given to the conveyance under which the defendants claim.

There is no error.

PER CURIAM.                    Judgment affirmed.