FRANK GODFREY as Trustee for Thomas Metcalf *v.* JOHN KIDWELL.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MAY 11, 1903.          DECIDED DECEMBER 15, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A deed of all the grantor's right, title and interest in certain land, even if executed under the mistaken belief, shared in by both parties, that the grantor's interest would in all probability prove to be not more than one half, will not be set aside in a court of equity on the ground of mistake, if both parties, in executing and receiving the deed, knowingly speculated as to what such interest was.

OPINION OF THE COURT BY PERRY, J.

Thomas Metcalf, the complainant's *cestui que trust,* who became of age on January 13, 1901, executed to the respondent on April 4, 1899, for the consideration of $100 a deed of all of his right, title and interest in the land of Wailele, Manoa, Oahu, containing an area of 36.10 acres, and on February 4, 1901, for the consideration of $3000 a second deed relating to the same property. In the second deed, the language used is, in part, that "I, Thomas Metcalf, * * * the grantor named in a certain deed dated the 4th day of April, A. D. 1899, and recorded in the Register Office, in Liber 194, on pages 29 and 30, being now of legal age, * * * do hereby confirm said deed and do convey, remise, release and forever quitclaim unto the said John Kidwell and to his heirs," all of the land of Wailele just mentioned. The prayer of the bill in this case is for a decree

declaring that the two deeds were intended and understood by both parties to convey and did convey no other or greater interest than an undivided one half of the land described, that the deeds be cancelled and that the respondent be ordered to reconvey the land to complainant upon the return to him of the sum of $3100 and interest.

The main averments set forth in the bill as grounds for the relief asked are as follows: that Theophilus Metcalf, grandfather of Thomas Metcalf, devised the property in question to his son Frank for life, providing further "that if my said son shall decease leaving children lawfully begotten the property by this instrument to him bequeathed, shall descend to such heirs, but if he shall decease not leaving lawfully begotten children, as aforesaid," then to others; that Frank Metcalf died March 9, 1900, leaving him surviving Thomas, a lawfully begotten child, and a daughter Emma Metcalf Ikaika; that at the time of the execution of each of the deeds above referred to, it was represented to Thomas by his father and by respondent that Emma and Thomas were the lawfully begotten children of Frank, and that the interest of Thomas conveyed by the deed of April 4, 1899, consisted of an undivided one-half; that in February, 1901, while Thomas' attorney was absent from the Territory, the respondent's attorneys offered him, Thomas, $3000 for his one-half interest and that, being weak of mind, unaware that the true value of his half interest was more than $7000, and totally ignorant of the value of land in these islands, he accepted the offer and executed the second deed; that it was represented to Thomas by respondent's attorneys that the interest to be conveyed by the second deed was an undivided one-half; that such attorneys and Thomas all supposed at the time that an undivided one-half was all the interest that Thomas owned and that the attorneys represented to Thomas that Emma owned the other one-half interest; that the respondent at the time understood that the interest conveyed was an undivided one-half; that on March 8, 1899, respondent purchased of Emma all of the right, title and interest in the property; that in June, 1902, the Supreme Court of Hawaii decided that Emma

was not the lawfully begotten child of Frank and that after that decision the respondent for the first time claimed and now claims that by the two deeds in question Thomas conveyed the whole of the land and not one-half only; that the whole land is, as Thomas has ascertained since the making of the deeds, of the value of $14,000.

The Circuit Judge found that the deeds had been executed through a mistake, shared in by both parties, as to what Thomas' interest was, and that at the time the grantor intended to convey and the grantee to acquire thereby an undivided one-half interest only, and decreed a reconveyance of the other· one-half. It is from that decree that the present appeal was taken.

The evidence does not show that the parties to the deed or either of them understood that the interest conveyed was not to be in any event greater than an undivided one-half or intended to limit the operation of the deed to that extent. On the contrary it does show that both parties understood that *all* of the grantor's interest, whatever it might be, without limitation,— large or small—was being sold and purchased and was to pass by the deed, and this, too, although both parties doubtless supposed that in all probability the grantor's interest would prove to be not more than one-half. The parties speculated. Now that the interest in question has proven to be or seems to be the whole, equity cannot grant the grantor relief. See 2 Pom. Eq. Jur. Sec. 855.

The deed of April 4, 1899, was clearly speculative. It purported to convey all of the grantor's right, title and interest. It was executed during the lifetime of Frank Metcalf, the life-tenant, and while there was yet a possibility that Emma Ikaika, the grantor's sister, might decease before Frank Metcalf and that Frank might die before Thomas,—in other words while there was yet a possibility that the whole estate might pass to Thomas under his grandfather's will and to the respondent under the deed. Under his own testimony, Thomas fully realized this. The second deed was intended to be confirmatory of the first. The evidence and the bill of complaint show this and so does the deed itself upon its face; and in the evidence can be

found no reason for believing that the second deed was intended to be more limited in its operation than the first. At the time of its execution there were rumors of many claims adverse to Thomas, some in whole and some in part, and a good prospect of much litigation. The respondent's policy was to buy up all the claims or interests possible. He purchased those of Emma and Thomas and attempted, without success evidently, to purchase two others, those of Mrs. Rowland and of one Prosser. The respondent and his attorneys thought, perhaps, that Thomas' interest would prove to be more than one-half but they were not certain about the matter,—it might prove to be much less than one half—and had necessarily to take some chances while so much litigation was impending. Thomas himself, while he thought that his interest was one-half, did not know just what it was; he so testifies. Neither the respondent nor either of his attorneys made any representations to Thomas as to what his interest was, but, on the other hand, Mr. Robertson and Mr. Wilder, each in turn, told Thomas before execution (the deed was read to Thomas and was by him read three or four times and on separate days before execution) that the deed was so drawn as to convey *all* of Thomas' interest, *whatever it might be.* (Mr. Robertson's explanation was made immediately after a statement by Thomas to the effect that he thought that his interest was one-half). The testimony of each of the attorneys is positive, direct and clear on this point and we believe it to be true. Thomas said that was satisfactory and signed the deed. The deed, too, on its face purports to convey all of Thomas' interest whatever it may be. In the face of these facts and more particularly of the attorneys' statements to him concerning the effect of the deed, can it now be held that although he signed a deed conveying *all* of his interest *"whatever it may be,"* Thomas nevertheless at the time understood that that meant "up to but not exceeding one half ?" We think not. He expressed no such understanding at the time, but assented to the form as explained. The attorneys' explanations of the deed were couched in plain English and we believe that he understood them.

That deeds are not to be lightly set aside, there can be no doubt. In order to justify a court in rescinding or reforming such a written instrument, the mistake or other ground relied upon by the petitioner must be established by evidence which is clear and convincing. The evidence in this case not only fails to comply with this rule but clearly shows that there was no mistake such as is contended for.

There is nothing in the evidence to warrant a finding of actual fraud. The parties were not in any relation of trust or confidence but dealt at arm's length. The grantor was cautioned before entering upon the negotiations leading to the execution of the second deed that he was at liberty to repudiate the first and that he was not under any obligation to confirm it.

The decree appealed from is reversed and the cause remanded to the Circuit Judge for the entry of a decree dismissing the bill and for such further proceedings as may be necessary.

*Thomas Fitch* for complainant.

*Robertson & Wilder* for respondent.

### CONCURRING OPINION OF FREAR, C.J.

I concur in the foregoing conclusion. There is no doubt that courts of equity go very far in relieving from mistakes—some courts relieving from pure mistakes of law, some of them distinguishing between mistake and ignorance of law (see Fry, Spec. Per., 3rd ed., Sec. 765 and note, and most courts relieve from mistakes as to private rights, which, although often arising solely from mistakes of law, are of a mixed character and are regarded practically as in the nature of mistakes of fact. In the present case, the alleged mistake relied on may, perhaps, be regarded as of the last mentioned kind; and the fact that the plaintiff had only just arrived at the age of majority when he executed the deed from which he asks relief, coupled with the fact that the defendant will receive a very large value in comparison with the consideration he paid, if the transaction is allowed to stand, naturally appeals to a court of equity. But the circumstances must be considered as they appeared at the time,

and not as they turned out afterwards, and if the parties really intended to take their chances and to make a speculative contract equity cannot relieve.   As said in Pom., Contr., Sec. 239: "where parties have knowingly entered into a speculative contract, that is, one in which they intentionally speculated as to the result; and the facts upon which such agreement was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief either by way of defeating or rescinding the contract; in such classes of agreements the parties are supposed to calculate the chances, and they certainly assume the risks."

The mere fact that the deed in form purports to convey all the interests of the grantor would not of itself prevent relief, even though both parties understood precisely what the language was and its legal effect, if they in fact contracted on the basis of a particular interest mistakenly believed by both parties, or by one in consequence of inequitable conduct of the other, to be the interest actually conveyed. 2 Pom. Eq., Sec. 849. But was such the case here? There is not a particle of doubt that the contract was speculative up to a one-half interest at least. Both parties recognized that it might prove to be less. If it did so prove, the grantee of course would not be entitled to relief on the theory that both thought that the interest would prove to be one-half. Theoretically there is no reason why the contract could not be speculative up to a one-half interest, and made by mistake to cover the whole or more than one-half, so as to justify relief as to all actually conveyed above one-half through mutual mistake. There is also much reason to believe that both parties in this instance believed at the time that the interest of the grantor would not turn out to be more than a one-half interest. But did not they take their chances as to all over as well as to all under one-half? On all the evidence I am inclined to think they did, and the burden was on the plaintiff to show not merely that they may not have done this, but clearly that they did not.

Pom., Contr., Sec. 238. The question is not so much what each thought within himself, as what their mutual understanding was; not so much what each calculated in reasoning upon the probable result, as what it was with reference to which they contracted. They did not discuss the extent of the vendor's interest. The vendor, indeed, remarked at one point in the negotiations that he thought his interest was one-half but that he did not know, but he was told that the deed was drawn so as to convey all his interest whatever it was. It is true, parties may contract with reference to a subject matter as affected by some uncertainties and act through mistake in respect to other particulars, so as to present a case for relief, but that was not the case here. They contracted with reference to all uncertainties as to the extent of the vendor's interest, and in such case it is immaterial whether they had in mind each uncertainty specifically or not. They said nothing as to uncertainties which might reduce the supposed interest to less than a one-half interest as well as nothing as to those that might increase it to more than that amount. The facts were equally known to both parties, so far as appears, and both contracted with reference to the uncertainties, whatever they were, as to the extent of the grantor's interest, recognizing that there were uncertainties though perhaps not knowing particularly all of them. There is no satisfactory evidence as to what elements each actually took into consideration in estimating the probable result,—assuming that their unexpressed thoughts could affect the result in law. In most cases of this kind in which relief is given, the mistake clearly appears from the language used or from external facts, as where there is an attempted purchase through mistake of what the vendee already owns or of what is non-existent or what turns out to be a different subject, &c. See Pollock, Contr., 418 *et seq.*

### DISSENTING OPINION OF GALBRAITH, J.

I cannot concur in the conclusion announced above by the majority of the court.

The Circuit Judge found that while the consideration of three thousand dollars recited in the second deed was less than

the value of one-half the land conveyed still it was not so grossly inadequate as to justify the court in setting aside the deeds on that ground; that the deed was executed under a mutual mistake of fact; that each of the parties believed at the time that Thomas Mecalf owned only a one-half interest in the land and that that was all he intended to convey and all that John Kidwell expected that the deed did convey to him.

To my mind these findings are fully supported by the evidence and the decree of the Circuit Judge should be affirmed.

The general doctrine is that a court of equity will grant its affirmative or defensive relief, as the circumstances may require, from the consequences of any material mistake of fact but will not relieve against a mistake of law and that a mistake relative to one's private legal rights or interest is treated as a mistake of fact. Pomeroy's Eq. Jur. Sections 842, 843, 849, 852; Maupin on Marketable Title to Real Estate, Sections 343, 244; 20 Am. & Eng. Ency. of law, 2nd Ed. 818, 819; *Wilson v. Western N. C. Land Co.,* 77 N. C. 445, 452; *Gillispie v. Moon,* 2 Johns Ch. 585; *Fly v. Brooks,* 45 Ind. 50; *Baker v. Massey,* 50 Iowa 399; *Haviland v. Willets,* 141 N. Y. 35; *Cooper v. Phibbs,* L. R. 2 H. L., 149, 190.

The facts of this case bring it clearly within the rule as given by Pomeroy in Section 849, above cited, as follows: "Whenever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property, or contract, or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Did the parties speculate in this transaction? The first deed, that executed during the minority of Thomas Metcalf, may have been speculative. There were several contingencies that possibly were before the minds of the parties that might happen and change the interest of the grantor in the premises attempted to

be conveyed. There certainly was a chance whether Thomas would ratify the deed on reaching his majority. It will be observed that the defendant did not place a high valuation on this deed since he only paid one hundred dollars for it. But the second deed stands upon an entirely different footing. At the time of its execution there was a definite understanding as to the interest the grantor claimed in the land. The consideration paid for this deed was three thousand dollars. This last fact alone proves to my mind that the defendant was satisfied that the grantor's claim to one-half interest in the land was well founded.

It is found in the opinion of the court that the elements of chance, the speculative features that entered into the contract, were the rumors of "many claims adverse to Thomas" and "a good prospect of much litigation," that both of the parties took into consideration the chances that some of these various claimants might establish a claim to an interest in the premises and thus reduce the grantor's interest to less than one-half. All this might be admitted without agreeing to the conclusion announced. It does not appear that any of these rumored claims ever materialized in a suit or in the establishment of any recognized interest in the land. The subsequent event that did change the status of the interest of the grantor in the land, the event that was not considered or anticipated at the time of the execution of the deed, was the decision of this court filed in June, 1902, holding that Emma Metcalf was not "lawfully begotten" and had no interest in the land. This decision left Thomas Metcalf with the whole of the land and not one-half of it as both parties understood it to be at the time of the execution of the second deed. This decision was rendered more than one year subsequent to the date of the deed. Such a decision or construction of the will was not anticipated by either party when the deed was executed. It was not mentioned or thought of, was not considered doubtful or contingent, nor did the parties deal in reference to it. The attitude of the defendant in litigation then pending and his purchase of Emma's supposed interest in the land for a valuable consideration prior to this decision

proves conclusively that he did not anticipate the decision or speculate on its bearing on his deed and the interest conveyed thereby. He should not be permitted to take advantage of the decision to the great detriment of his grantor.

Under the law governing speculative contracts the rule is well settled that the element of chance, or the thing or event that is uncertain, must be known to the parties at the time of entering into the contract and the parties are considered to have calculated the chances of the uncertain event happening or not, and to have contracted in relation to it.

The rule is stated as follows: "It is also necessary that the uncertainty in respect of which the contract is made, should be understood and intended by both parties as attaching to the very same event or act which, being then unknown but anticipated, afterwards happens. If, therefore, the parties contract with reference to a certain contingent or doubtful event, and some other unknown fact, to which the parties had not referred, and in respect of which they had not contracted subsequently arises, materially altering their relations, and rendering an execution of their agreement inequitable, its enforcement may, under such circumstances, be denied." Pomeroy, Contracts, Sec. 178, p. 229. See also *Williard v. Taylor,* 8 Wall 557.

Again the deed is unfair and unjust and ought to be reformed on this ground alone. The finding of the Circuit Judge that the three thousand dollars is not a fair consideration for one-half of the land is supported by the evidence. The lowest valuation placed on it by any of the witnesses at the hearing was ten thousand dollars. I am not willing, under the circumstances of this case, to confirm title in the defendant to an entire tract of land worth at least ten thousand dollars, and for which he only paid three thousand one hundred dollars, when both the grantor and grantee at the time of the execution of the deed intended that it should convey one-half only.

Again the method pursued by the defendant in obtaining these deeds does not appeal to my sense of justice and right. First we find him taking a deed from a minor for property worth many thousand dollars for a paltry consideration of one hun-

dred dollars. Then as soon as the minor arrives at legal major-- ity the defendant hires two lawyers and the three of them set after the young man with the purpose of inducing him to execute a confirmatory deed conveying his inheritance to the defendant. The defendant knew that the young man was without business training or experience and that he could not resist the temptation to accept an offer of a large sum of money for his inheritance whether it was a fair consideration for it or not. Still it seems not to have occurred to the defendant to suggest to Thomas Metcalf that he consult independent advice or some disinterested friend before closing the deal. Nor did these conditions seem to deter the defendant even from "driving a hard bargain" for the one-half interest which the grantor was then understood to own. Such a transaction has few of the elements of a "deal at arm's length" and ought not to be so classed.

I am convinced that the ends of justice would be subserved by granting affirmative relief against this most inequitable transaction, at least, to the extent of affirming the decree rendered by the Circuit Judge.