JOHN H. ANDERSON v. TABITHA E. RAINEY, Executrix, . and others.

*Sale of Land—Deficiency in quantity sold—Pleading—Fraud must be alleged—Res Adjudicata—Caveat Emptor.*

1. Where two successive contracts for title and a deed were made at intervals, for a tract of land, describing it by courses and distances, and as containing 893 acres, *more or less,* and the vendee, after remaining in possession many years without informing himself as to the number of acres in the tract, brought an action to enjoin a sale under a mortgage given for the purchase money, alleging that the tract contained only about 793 acres, and that the vendor made false representations as to the quantity, but not that vendor knew them to be false; *Held,* that fraud not being positively charged, it should not be found by implication.

100—21

2. To entitle a vendee of land under such contract or deed to relief, because the tract contains a less quantity than vendee supposed, he should allege and show that false and fraudulent representations were knowingly made by vendor, with intent to deceive; or the discrepancy must be so great as to warrant a correction of the instrument on the ground of mistake.

3. Whatever the representations made by vendor to induce vendee to buy, when, in an action brought by vendor to collect the purchase money, vendee asked an abatement of the amount claimed, on account of alleged inability of the vendor to make title to part of the land, and asked a survey of the tract, and the action was compromised upon terms set out in the judgment, and a deed executed accordingly; *Held*, that the plea of *res adjudicata* applies to an action by the vendee for relief because of an alleged deficiency in the quantity of land—such plea applying not only to the points which the Court was required to adjudge, but to all others which properly belonged to the subject of the issue and which the parties, exercising diligence, might have brought forward.

4. If, in a contract for the purchase of land, a party fails to avail himself of the sources of information, readily within his reach, and relies upon representations, which, though not true, were not made with any false and fraudulent intent, the maxim of *caveat emptor* applies.

This is an APPEAL by the plaintiff, from the refusal of *Gilmer, J.*, to grant a motion made at Chambers, on the 30th of July, 1887, to continue an injunction, restraining the sale of the land mentioned in the pleadings until the final hearing of the cause, and also upon exceptions (reserved) to the rulings of Boykin, J., previously made in the cause, which is pending in the Superior Court of ROCKINGHAM.

*Messrs. Graham & Ruffin,* for the plaintiff.
*Messrs Scott & Mebane,* for the defendants.

DAVIS, J. The relief demanded by the plaintiff is of an equitable nature, and it is necessary to a clearer understanding of the questions involved, to give a condensed statement

of the material facts set out in the voluminous record sent to this Court.

On the 2d day of July, 1873, John G. Rainey and Tabitha, his wife, contracted with the plaintiff to convey to him in fee, with covenants of warranty, a tract of land in Rockingham County, known as the "Hobson tract," the boundaries of which, with courses and distances, are given, containing eight hundred and ninety three acres,. more or less, at the price of $8,930, for the payment of which, two bonds were executed—one for $1,000, to be paid on or before the 1st day of January, 1879, and the other for $7,930, to be paid on or before January 1st, 1879; each bearing interest from January 1st, 1874. It was also agreed, that the purchaser should have "the privilege to bargain and sell any portion of the land described, by the mutual consent of the parties as to the price, provided the purchase money be paid to the said Rainey and wife, to be entered as a credit" on the bond of the purchaser, who was to have possession on the 1st day of January, 1874; but if he failed to pay the bond to become due on the 1st of January, 1874, on or before that day, he was to surrender possession to Rainey and wife, retaining the right to gather and hold the growing crop; and there was a like provision, that if he failed to pay the $7,930 on or before January 1st, 1879, he was to surrender the possession. On the 27th day of January, 1879, another agreement was executed by the parties, "in lieu" of that of July 2d, 1873, by which the plaintiff, Anderson, executed his bonds to Rainey and wife for $9,775.50, to be paid as follows: one for $1,000, June 1st, 1879; one for $1,000, June 1st, 1880; one for $1,000, June 1st, 1881; one for $1,000, June 1st, 1882, and one for $5,775.50, to be paid June 1st, 1883, all bearing interest from January 27th, 1879; and the said Rainey and wife were to convey the said land to the said Anderson, upon the payment of the said bonds and interest, excepting and reserving, however, a portion thereof within specified boun-

daries, the number of acres to be ascertained by survey, for which a credit of $10 per acre was to be entered as of January 27th, 1879, on the bond to become due on the 1st of June, 1883. The number of acres so excepted was ascertained to be 227½, making the credit $2,275.

It was also stipulated, that if the said Anderson should fail to pay promptly the respective sums as they should become due, then Rainey and wife were to have a lien on, and be entitled to take from the premises, one-third of all the crops made on said land, to be credited at the market price on the bond falling due at the time the crop is so taken, and if the one-third of the crop should exceed the amount of the bond so due, the excess was to be credited on the bond next to fall due.

There were other stipulations, not material to be stated.

At the Fall Term, 1882, of Rockingham Superior Court, Rainey and wife brought an action against the said Anderson, alleging, in their complaint, that he had failed to make payment in accordance with the terms of the agreement referred to, and that, being in default, they had made application to him for one-third of the crop, as stipulated, to be applied to the payment of the bond past due, and that he refused to allow them to take possession of the same, alleging, as a reason for the refusal, that one of the lines called for in the agreement did not run where he supposed it did, which, the plaintiffs in that action alleged, was a mere pretence, as the boundaries were distinctly set forth in the agreement, and the defendant had continually imposed upon them by making promises to fulfill his obligations. They also alleged that he had no property in excess of his exemptions, other than his interest in the land, and they demanded judgment for possession, and the appointment of a receiver of the rents and profits.

The defendant in that action (the plaintiff in this), answered, averring, among other things, "that while it is true,

perhaps, that the boundaries of the tract, as set out in the agreement, are correct, yet the plaintiffs, in negotiating with him for the sale, undertook to point out to him the different lines, and in that portion adjoining the ' Brodnax land,' they were careful to designate exactly where the line was, calling attention to the fertility of the land, and making representations in relation thereto, by which he was induced to enter into said contract of purchase, and matters thus stood till about August, 1881," when a portion of said land, embracing 25 or 30 acres of great and special value, for reasons stated, was claimed by the devisees of E. T Brodnax, and the possession surrendered to them by the direction of the plaintiffs.   He further averred, that besides the payments of large sums specified, he had put permanent improvements upon the land (enumerating them), exceeding $1,100 in value, and asked, by way of relief, that the agreement be rescinded, and that he recover of the plaintiffs (Rainey and wife) the several amounts paid by him, and the enhanced value of the land, &c., or that he have an abatement of the purchase money, by reason of the inability of the vendors to make title to the 25 or 30 acres referred to.

A replication was filed, denying the statements in the answer, relative to the line and land adjoining the Brodnax land, avering title to the land claimed by the devisees of E. T. Brodnax, and that the surrender thereof was not by their direction, and that the alleged improvements, with slight exceptions named, were made prior to the contract of June, 1879, as also were the payments made on the first contract.

An order was made by Shipp, J., on the 5th of September, 1882, appointing a receiver, and subsequently, upon motion of the defendant (present plaintiff), an order was made by Gilmer, J., for a survey of the land mentioned in the contract, and of the Brodnax land adjoining it.

On the 29th of April, 1884, the action was compromised, the plaintiff agreeing to allow "a deduction on the purchase

money of the land sued for, of one of the bonds of $1,000, and its interest," and other credits agreed on, and there was a judgment dismissing the action, at the cost of the defendant Anderson.

To carry into effect the compromise, the following agreement was entered into on the 14th of May, 1884:

"John H. Anderson and John G. Rainey and wife, Tabitha, having this day come to a full and complete settlement of all their land difficulties, heretofore the subject of suit between them, the sum of $6,490.66 *are* ascertained to be due from said Anderson to said Rainey, which sum is to be paid and secured respectively, as follows:

"On Friday, the 16th, at Wentworth, the sum of $1,700 *are* to be paid by said Anderson to said Rainey. For the balance two bonds are to be executed by said Anderson to said Rainey, drawing 8 per cent. interest from 1st day of May, 1884; the first of which is to be in the sum of $790.66, and due six months from the 1st day of May, 1884; the second, in the sum of $4,000, and due twelve months from 1st day of May, 1884. These bonds are to be secured by a deed of trust upon said land, with privilege to sell in default of payment in either case when due, said deed of trust to also secure all cost attending the same. This deed of trust is to be executed between now and the 16th, Rainey and wife having first, or simultaneously, made said Anderson a deed to said land.

"In addition to the above, it is further agreed, that said Anderson shall convey, in said deed of trust, one-third part of his entire tobacco crop, to be grown during this year (1884), as an additional security to the said bond of $790.66.

"And it shall be lawful for the trustee in said deed of trust to take charge of said one-third part of tobacco crop and manage as he may think best, applying the proceeds, when collected, to the payment of the said bond of $790.66, provided the same shall be then unpaid in whole or in part.

"In the event that said Anderson shall pay the said bond

of $790.66 at its maturity, then, and in that event, the said trustee shall have no power or authority to take charge, as above, of said one-third of tobacco.

" It is further agreed between parties aforesaid, that if the said Anderson hereafter find a receipt covering 25 bushels of wheat, as bought 1880, and $100, of the spring of 1880, claimed by him to have been paid, or if he shall offer legal or sufficient proof of either of the said payments claimed as aforesaid, then he shall have credit therefor on above bonds."

On the same day the said Anderson, by deed, conveyed the land, so purchased of Rainey and wife, to P. B. Johnson, trustee, &c., in accordance with the agreement.

John G. Rainey died on ____, 188_, leaving a will; which was duly proved, and Tabitha Rainey, the executrix named therein, qualified as such. He also left six children, who, with Tabitha Rainey, were the devisees of his real and personal estate. At the request of the executrix, P. B. Johnson advertised the land conveyed to him in trust, to be sold on the 29th of April, 1887.

On the 14th day of April, 1887, J. H. Anderson commenced this action against Tabitha Rainey, executrix of J. G. Rainey, and the devisees of said Rainey, and P. B. Johnson, the trustee.

The complaint, after setting out the substance of the agreements of July 2d, 1873, and of January 27th, 1879, and the settlement of May, 1884, and alleging certain payments, further alleges :

" 7. That at the time of making the original contract, on the 2d day of July, 1873, and when the same was modified and changed, on the 22d of January, 1879, and at the time of making the deed, on the 15th May, 1884, although the metes and bounds of said lands were given in each of said contracts and in said deed, and although said purchase was by the acre and not per the tract, yet there was no actual survey to ascertain the number of acres in said tract, because

this plaintiff was induced to believe there were 893 acres in said tract of land, by the assurances and representations of the said John G. Rainey, who was then in the actual possession thereof and had been for some twenty-five years, and plaintiff avers that he did not have a survey of said land made to ascertain the number of acres, because of the positive representations and assurances of the said John G. Rainey that it contained 893 acres at the time said contracts were made.

\*          \*          \*          \*          \*          \*

10. That the plaintiff, relying upon the representations and assurances of the said John G. Rainey, that said tract of land contained eight hundred and ninety-three acres, was induced not only to execute the said contracts and to give the deed of trust to the said P. B. Johnson, trustee, to secure the balance of the purchase money, but was induced thereby to pay several thousand dollars of the purchase money to the said John G. Rainey during his life-time, and to his personal representative since his death, and that said plaintiff, at the time of said payments and when executing said contracts and deeds, believed that said tract of land contained 893 acres, when, in fact, plaintiff avers that said tract of land did not contain more than 793 acres, being one hundred acres less than the number represented by the said John G. Rainey.

11.   That this plaintiff avers that, having occasion to have a portion of said tract surveyed, which he had sold to the defendants, or some of them, he ascertained for the first time that said tract did not contain by one hundred acres, or thereabouts, the number of acres which the said John G. Rainey represented and assured plaintiff that said tract contained, and plaintiff avers that he was induced by such representations and assurances to buy the same, and that such representations and assurances, at the time they were made, were false and untrue, but plaintiff will not say that John

G. Rainey knew them to be false and untrue, but having the deeds and knowing the number of acres in his original purchase and the amount of land he had sold, plaintiff says he was grossly negligent and careless, so much so as to be guilty of fraud and wrong to this plaintiff, to make such representations and assurances to plaintiff, and thereby inducing him to buy and pay three fourths of the purchase money without first correctly ascertaining the number of acres in said tract, and such representations and assurances, in the absence of knowledge or putting plaintiff on his guard, is fraudulent, and the injury to the plaintiff will be great and irremediable without the aid of the Court.

12. That as soon as the plaintiff ascertained that there was such an error in the number of acres in said tract, he advised Tabitha E. Rainey, executrix of John G. Rainey, of the same, and offered to have said land surveyed, and to pay for all the land in the tract, and claiming that there should be an abatement of the purchase money as to so many acres as upon survey were found wanting, and plaintiff avers that he is entitled to a credit for this amount, and that the plaintiff was then, and is now ready, willing and able to pay, whatever balance may be found due from him, after giving him his first and proper credits, and making abatement for the said deficiency in said land."

After other allegations of the threatened sale, his right to credits, &c., the complaint concludes with the following prayer for judgment:

" Whereupon the plaintiff demands judgment, that an account be taken by the Clerk of this Court of all payments made by the plaintiff to John G. Rainey during his life, or to his personal representative and executrix since his death ; and second, what abatement, if any, of the purchase money the plaintiff is entitled to, on account of any deficiency in the number of acres in the land sold him, and, in order to ascertain this deficit, may there be a survey of said tract of

land, in order to ascertain the number of acres therein. And that, in the meantime—during the pendency of this action—the defendant P. B. Johnson, trustee, be restrained and enjoined from selling said land, or any part thereof, or further proceeding under said deed of trust, until the further order of this Court. And may the Court grant to the plaintiff such other and further relief as the nature of his case may require."

The defendant, Tabitha Rainey, whose answer is adopted by the other defendants, in answer to the complaint, alleges:

"1. For a defence to the said action, and in bar of relief therein sought:

That the plaintiff ought not to be admitted to institute or maintain this action, nor to have the relief sought by him, and is estopped so to do; for that all matters in controversy touching the sale of land mentioned in the complaint, were fully and finally settled and adjudicated in a certain action heretofore begun and determined in this Court, wherein John G. Rainey, now deceased, and Tabitha E. Rainey, this defendant, were plaintiffs, and J. H. Anderson (the present plaintiff) was the defendant, which said action was so finally disposed of and ended under a judgment of this Court, duly had and rendered at Spring Term, 1884, thereof, which judgment was based upon the written terms of compromise and settlement, duly signed by the parties and their attorneys on the 14th day of May, 1884, as may be fully seen by inspection of the papers and proceedings constituting the judgment roll in said action, and of which record a complete exemplification will be attached hereto if and when required, and to which record is now attached a copy of said written agreement, marked exhibit "A," judgment thereupon, marked exhibit "B," and of the order of survey therein, marked exhibit "C;" and this defendant claims the benefit of this her plea in bar, as fully and amply in all respects, as if it had arisen upon demurrer."

Further answering, among other things, she denies that

the sale of the land was by the acre, as alleged, but says it was a "sale of 893 acres, more or less, at the price of $8,930," "as may be seen by reference" to the contract.

\*     \*     \*     \*     \*     \*

"5. That it is true, as alleged in Article VII., that no actual survey of the land was had at the time of the contract referred to, but she doth aver that it would have been had, if required, and that John G. Rainey made no representations than such as were proper and usual in such transactions, and she expressly denies the inferential statement of imposition in said article pleaded by *innuendo*.

6. That as to the allegations of Article X., she could not answer, of her own knowledge, as to whether the same are true or not, but doth aver that the plaintiff is estopped, as hereinbefore pleaded, to bring in question the quantity of land.

7. That the allegations and charges of fraud contained in Article XI, are expressly denied, and she doth aver, that the allegations therein as to the plaintiff's first knowledge of a deficiency, are inconsistent with his answer in the original suit above referred to, and are immaterial, under the defendant's plea of estoppel in this cause.

8. That the allegations of Article XII. are not true as stated, and the defendant avers that she, having heard that the plaintiff was setting up claims of deficiency in quantity, sent him word to come and see her and let her know whether the report was true, but he failed to do so; and it is not true that he offered to have the land surveyed as alleged, and she denies, upon information and belief, that the plaintiff is ready, willing and able to comply with his contracts and agreements, and she doth charge that this plaintiff hath brought this suit, with its disingenuous and unfair pleadings, for mere purposes of delay.

\*     \*     \*     \*     \*

11. That this defendant is advised that this action of the

plaintiff is inequitable, unjust, illegal and not fit to be enter-
tained by the Court, and is further advised that, at all events,
the plaintiff's prayer for an account, a survey, and for a con-
tinuous injunction, cannot, in equity, be heard or allowed,
only upon the condition that the compromise and settlement
and judgment thereon (based as they were upon an abatement
of one thousand dollars from the purchase money due) be set
aside, and the said original suit brought forward on the
docket and set down for hearing so as to place the parties
and privies to said action *in statu quo* under their original
right.

Whereupon the defendant demands judgment:

1. That this action be dismissed; or,

2. That the orignal suit be re-instated on the docket and
set down for hearing upon the pleadings therein, and

3. To such other and further relief as she may be entitled
unto."

On the 30th of May, 1887, the case was heard before Boy-
kin, J., at Chambers, "upon the pleadings, proofs and ex-
hibits adduced, the verified complaint and answers being
treated as affidavits, duly made for the hearing," who found
as facts, that:

"1. The allegations of fraud set forth in the complaint
are not true.

2. That the judgment rendered at Spring Term, 1884, of
Rockingham Superior Court by his Honor, A. A. McKoy,
upon the terms of compromise therein referred to in the case
of John G. Rainey and wife against J. H. Anderson, touch-
ing the subject-matter involved in the suit now before the
Court, was and is a final and complete determination of the
rights of the parties up to the date of said judgment; and
the plaintiff in the present action is by the said judgment in
said former cause estopped from asking any relief as to the
quantity of the land sold by Rainey and wife to Anderson,
and as to any transactions had or payments made before

and up to the date of said judgment; and the Court further finds, that there was no agreement to sell said land by the acre, but the contract was for the sale by the quantity."

It was referred to James M. Anderson to take and state an account of all payments, and report.

The plaintiff excepted.

" The cause being heard again by Gilmer, J., at Chambers, at Wentworth, on the 30th day of July, 1887, the parties having agreed to the credits to which the plaintiff is entitled, and avoiding an account, and the plaintiff moving his Honor to continue the injunction until the final hearing of the cause, upon consideration of the proofs, the same being those adduced before Boykin, J., his Honor refuses to further continue the injunction, to which plaintiff excepts and appeals, giving notice thereof, which was accepted by defendants."

It is conceded by the able and learned counsel for the plaintiff, that there was no warranty as to the quantity of the land, and he bases his equity upon the alleged fraud practiced upon him by John G. Rainey, in representing that the tract contained 893, when, in fact, as alleged, it contained only about 793 ; that the sale was made at $10 per acre, and not *in solido*, by the quantity, " and that the representations and assurances," in regard to the quantity, were false. He does not charge that the vendor " knew them to be untrue ;" on the contrary, he seems careful not to so charge, for he states in his complaint, that he " will not say that John G. Rainey knew them to be false and untrue," and the only grounds upon which the charge of fraud is based, are set out in paragraphs 7, 10 and 11 of the complaint, and it is insisted by his counsel, that by reason of the representations and assurances of the vendor, upon which the plaintiff relied, he was thrown off his guard, and was induced to purchase without demanding a survey.

It is conceded—the written contracts and deeds all show—

that the boundaries of the land, with courses and distances, were given, and it was within the easy power of the plaintiff to ascertain the quantity embraced within those boundaries, and whether it was "*more or less*" than 893 acres. It is also to be supposed, that the muniments of the vendor's title were of record and accessible to him, and if the record had disclosed a variance, whether as to title or quantity, from the representations of the vendor, he should have known it—it was his duty to have known it, for he is charged with a knowledge of the record—and as he accepted a deed giving the boundaries, and calling for 893, "more or less," it would seem, nothing more appearing, that, so far from the vendor being so "grossly negligent and careless," in regard to the representations, as to be guilty of fraud, the plaintiff himself was grossly negligent and careless in failing, either to inform himself as to whether the quantity is more or less, or to require the vendor to warrant that it was, at least, not *less*; and it is too late, after a delay of more than thirteen years, during all which time he was in possession, to ask the Court to find, by implication, that there was fraud, when the plaintiff himself will not charge that the party making the representations knew them to be false, but only that he induced him to buy, and received a portion of the purchase money, "without first correctly ascertaining the number of acres in the tract.". Fraud should be positively charged, and not by implication. *McLane* v. *Manning*, Wins. Eq., 60.

In the substituted contract of January 27th, 1879, the consideration is put at $9,775.54, and though it does not appear, it is probable that that was the amount then due on the original contract of purchase, increased by interest, and assuming it to be so, it serves to show that it was to be paid for "893 acres, more or less," as indicated in the first contract, and that while $10 per acre was the guide or estimate by which the aggregate was arrived at, it was not within the contemplation of the parties that the price should be varied from that named in the deed, if there should prove to be

more or less than 893 acres. It will hardly be insisted by the terms of the contract, if upon a survey made within a reasonable time, in the absence of any agreement other than those set forth, the land should have been found to contain 10 or 20 acres more, the vendor could have demanded $100 or $200 more, or if it should have been found to contain 10 or 20 acres less, the purchaser could have claimed an abatement of $100 or $200; in the absence of any fraudulent representation or act of the vendor, and to make such representation fraudulent, it must have been false, and known to be so, and made with the intent to deceive; or, unless the discrepancy should be so great as to warrant a correction of the contract or deed, upon the ground of mistake, as in *Wilcoxon* v. *Calloway*, 67 N. C., 463; *Gentry* v. *Hamilton*, 3 Ired. Eq., 376; *Leigh* v. *Crump*, 1 Ired. Eq., 299; *Newsom* v. *Bufferlow*, 1 Dev. Eq., 379; *Pugh* v. *Brittain*, 2 Dev. Eq., 34; *Pharr* v. *Russell*, 7 Ired. Eq., 222, and like cases.

But whatever may have been the character of the representations made by Rainey to the plaintiff at the time of the first contract of sale in 1873, and assuming that they continued to operate upon the mind of the plaintiff, and that the substituted contract of 1879 was entered into under the continuing misapprehension as to the quantity, and that the discrepancy was so great as to have entitled him to have the deed corrected, no such claim could avail him, after the compromise of the action instituted in 1882, to enforce compliance with the contract of January, 1879. In that action, the very question of quantity was raised by the answer of the then defendant, the present plaintiff, and he asked for an abatement of the purchase money by reason of the alleged fact that the vendor could not make title to 25 or 30 acres, claimed by the devisees of Broadnax, and at his instance there was an order of survey. This action was compromised upon the terms set out in the record, and it would test the credulity of the most simple and confiding, after reading the answer of the plaintiff to that action, to suppose

that he would continue to be misled and deceived by the representations of Rainey, and that when he entered into the compromise, and the original contract price was abated by $1,000 and interest, for an alleged, but controverted, failure of title to 25 or 30 acres, he was still to get 893 acres, and as it is alleged that he gets only 793, a further abatement of $1,000 is claimed.

No deed was executed by Rainey and wife to carry the contract into execution until, and in pursuance of the compromise, and the deed and deed of trust give the same boundaries and courses and distances as the original contract, and describe it as containing " 893, more or less ;" and assuming that the plaintiff, when he accepted the deed, thought that he was getting 893, and not *less*, it is mathematically certain, and he is obliged to have known, that he was not to pay for it by the acre, at $10 per acre, for $1,000 having been abated from the price, reduced it to less than $9 per acre.

But it is insisted that the $1,000 abated at the time of the compromise, had no reference to quantity, but was on account of failure of title to the land claimed by the devisees of E. T. Brodnax, and the following statement is presented by counsel to show the wrong and injustice to which the plaintiff will be subjected, if the judgment below shall stand :

" 893 acres @ $10 per acre, as estimated by parties,
     gives _____$8,930.00
     Deduct cash payment_____ 1,000.00

                                                  7,930.00
     Deduct abatement on account of Brodnax land__ 1,000.00

                                                  6,930.00
     $227\frac{1}{2}$ acres resold to vendors @ $10_____2,275.00

                                                  4,655.00
     Deduct cash paid prior to May 1, 1884_____ 700.30

                                                  3,954.70
     242 acres resold to vendor's sons @ $10_____ 2,420.00

                                                  $1,534.70 "

And he insists that, taking the number of acres to be 793, and applying the credit of $1,000 for the deficiency, it will leave a balance of only $535 of principal money, instead of $1,534.70, as above. This is erroneous. Deducting the $1,000 and interest, abated on account of the Brodnax land, from the contract price, and $7,930 are left, which would reduce the price, per acre, of 893 acres, to less than $9. But the plaintiff alleges, in his complaint, that he has paid three-fourths of the purchase money, but it appears, as is alleged by the defendants, that much the greater portion of this was by a resale of the land at $10 per acre, and the $1,000 abatement on account of the Brodnax land; so, assuming that he will get, after deducting the quantity resold, only 373 acres, as insisted, he will get it at a cost of less than $10 per acre.

But after remaining in possession for about fourteen years, under a contract and deed giving the boundaries, and after failing to meet his obligations first entered into, and entering into a new or substituted contract, and after litigation in an action brought against him to enforce that contract, in which the very defence set up raised the question of boundary and quantity, which could have been settled by the survey, which was ordered by the Court at the instance of the present plaintiff, and when, by ordinary diligence and care, any mistake or fraud might have been detected and exposed, and after a compromise of that action, the plaintiff is precluded, and is not entitled to the relief sought in this action. The very question could have been disposed of in the action of Rainey and wife against the plaintiff, which was compromised, and it is against the policy of the law to allow a multiplicity of suits about the same matter, and, as was said by RUFFIN, J., in *Tuttle* v. *Harrill,* 85 N. C., 456, "the plea of *res adjudicata* applies not only to points upon which the Court was actually required to pronounce judgment, but to every point which properly belonged to the subject of the issue, and which the parties, exercising reasonable diligence, might have brought

100—22

forward." See also *Wilson* v. *Western N. C. Land Co.*, 77
N. C., 445; *Yates* v. *Yates*, 81 N. C., 397.

If, in a contract for the purchase of land, a party fails to
avail himself of those sources of information readily within his
reach, and chooses to rely upon representations, which, though
not true, were not made with any false and fraudulent in-
tent, the maxim of *caveat emptor* applies, as it does to per-
sonal property, and Courts will not aid the purchaser.
*Walsh* v. *Hall*, 66 N. C., 233.

There is no error.