J. B. CALLOWAY AND WIFE, INA CALLOWAY, v. VERNA WYATT.

(Filed 1 May, 1957.)

**1. Trial § 23f—**

The evidence cannot be submitted to the jury on a theory of liability not supported by allegations, since proof without allegation is as ineffective as allegation without proof.

**2. Pleadings § 19c—**

The rule requiring a liberal construction of a pleading cannot warrant the construction into a pleading of an essential allegation which it does not contain.   G.S. 1-151.

**3. Fraud § 4—**

Intent to deceive is an essential element of an action for fraud, and a complaint which fails to allege intent to deceive, or facts from which the equivalent of an intent to deceive may be legitimately implied, is fatally defective.

**4. Fraud § 5—**

The right to rely on representations is inseparably connected with the correlative duty of the representee to use due diligence to ascertain the facts unless prevented from doing so by some artifice, or unless the representation is of such character as to induce action by a person of ordinary prudence.

**5. Same—Plaintiff held not entitled to rely upon representation under facts of this case.**

The evidence disclosed that in the negotiations for the purchase of a tract of land, the purchasers particularly asked about the supply of water from the well because of knowledge that wells and springs were going dry all over that locality, that the vendor repeatedly represented there was "plenty of water," and that the purchasers relied upon the representation without making any investigation. *Held:* The purchasers could have ascertained the volume of water by the exercise of the slightest diligence in turning on the spigots before purchasing, and in the absence of allegation that the purchasers were prevented by artifice or any act on the part of the vendor from making an investigation, action for fraud will not lie upon later discovery of the inadequacy of the water supply.

APPEAL by plaintiffs from *Johnston, J.,* Regular October-November Term 1956 of WILKES.

Action to recover $771.90 expended in digging a well on premises to secure an adequate supply of water, which expenditure was allegedly caused to be made by reason of an alleged misrepresentation by the vendor of the sufficiency of the water supply of the well on the premises.

These are the essential allegations of the complaint: Plaintiffs, husband and wife, entered into negotiations with defendant to purchase from her a house and lot so as to vest in them an estate by

the entirety. During the negotiations and prior to the purchase plaintiffs asked defendant if the house had an adequate water supply to meet the needs of their family, and "the defendant guaranteed to the plaintiffs and assured the plaintiffs that the house had ample water and that the well had ample water in it in order to meet the needs of the plaintiffs and their family." Pursuant to the guaranty and statement of defendant the plaintiffs paid the defendant $3,900.00 for the house: plaintiffs "predicated the purchase of (*sic*) the statement, guarantee and declaration which the defendant made that the said well located on said property had an ample supply of water to furnish the plaintiffs and their families with all the water they would need." After the purchase plaintiffs learned that the defendant's statements were false, that she knew they were false when she made them, that the well did not have sufficient water to meet the needs of plaintiffs and their family, and that defendant's guarantee was inaccurate. Plaintiffs notified defendant of the insufficiency of the water supply, and requested her to correct it by boring a deeper well or otherwise "in order to comply with her guarantee and in order to comply with the warranty which she made at the time of said sale," which request and demands defendant ignored. Wherefore, plaintiffs expended $771.90 in digging a well 178 feet deep on the premises to secure a sufficient supply of water, and "to bring said property to the place where it would comply with the warranty made by the defendant and in order to comply with the guarantee made by the defendant."

Plaintiffs' evidence tends to show these facts: In April 1956 plaintiff J. B. Calloway saw a For Sale sign on the premises. He went to the house accompanied by the folks in his car, told defendant he would like to look over the house, and asked her about the water. She replied: "Plenty of water, always had plenty of water, plenty of water for the use in the house, plenty of water." They walked over the premises, and came back by the well. Calloway asked defendant if she had ever had the well cleaned out or anything done to it. She replied: "No, had nothing done to it, always had plenty of water, plenty of water." They agreed on a price of $3,900.00, but Calloway said he wouldn't trade that day because it was Sunday and his wife was not with him.

Next day he and his wife went to the house. Calloway walked in the kitchen, and said he wanted a drink of water. He turned on the faucet, and there was no water. Defendant said the power was off. Defendant said: "I guarantee you plenty of water, plenty of water for the family. How many have you got in your family?" Calloway said four. Defendant said: "Oh, plenty of water, plenty of water for them; I guarantee that." On Saturday Calloway went back, and paid her $3,900.00 for the property. He asked her how the water was holding out. She replied: "Oh, plenty of water, plenty of water."

A week later Calloway went to the property, and found no water at ,all. A few days later Calloway saw defendant pulling out of the driveway to the street. He stopped her, and said: "Mrs. Wyatt, there is not any water. What is the matter?" "Oh," she says, "I never told you there was any water." Calloway said: "You told five or six of us there was plenty of water for a family, and you know it." "Oh," she says, "don't you aggravate me. I have been in the hospital, and I will ,sue you if you aggravate me and cause me to have to go back to the hospital."

A week or so after the purchase Calloway went to the premises to set out some boxwoods. He turned on the faucet on the outside of the well house to get some water and got only two buckets full. Defendant did nothing about the water supply. Plaintiffs had a well dug at a cost of $771.90. If the property had been as guaranteed or warranted to plaintiffs, its fair market value would be $3,900.00; its fair market value as plaintiffs found it was $3,200.00.

On cross-examination Calloway said the deed conveying the property to him had no warranty in it about water; that it did not mention water; "I didn't have the draftsman of the deed to mention anything about water in the deed." He didn't turn the spigots and make an investigation because the defendant was "so earnest about plenty of water, plenty of water." Plaintiff J. B. Calloway further testified on cross-examination: "There were spigots out in the yard. I turned them on after I bought the property. I turned one on in the kitchen before I bought the property and the power was off. I don't think I turned it on again before I bought the property. I would say that my health hindered me from measuring the water in the well. I have asthma and I can't crawl down and crawl in wells."

At the time of purchase of the property Mrs. Ina Calloway asked the defendant if there was water for the house all the time. Defendant replied she hadn't done any laundry since she had lived there, but there had been plenty of water for the house. Plaintiffs set out some boxwoods on the premises. To get water for them Mrs. Calloway started the pump on the premises, and it quit running. She could get no water. They found nothing wrong with the pump. They got water from a Mr. Johnson's well. Plaintiffs did not move in the house on the premises after the boxwoods were planted, until they had a well dug, because Mrs. Calloway was used to having water, and could not keep house 'without it. Before moving there they tried to get water nearly every day from the well without success.

Mrs. Wilma Moretz, a daughter of J. B. Calloway, before the purchase heard defendant tell her father in reply to his question about water, "we have plenty of water to use."

Mrs. Shelby Jean Wyatt, estranged wife of a son of defendant, heard defendant tell J. B. Calloway "there was using water."

Joe Calloway and Velva Lynn Calloway heard defendant tell their father, J. B. Calloway, before the purchase there was plenty of water. Joe Calloway said when they went there to water the boxwoods, they always got some water, about a bucket full. He also testified that before the purchase there was nothing to prevent him from turning on the spigots in the yard to see if there was water, and from measuring the water in the well.

Joe S. Johnson lived next door to the property purchased by plaintiffs. He moved there in September 1955. During the time he lived there defendant got water from his well practically every day. In the first part of 1956 Johnson began to have water trouble, and had to have his well dug deeper. He never got any water from defendant's well.

From a judgment of compulsory nonsuit entered at the close of plaintiffs' evidence, upon motion of the defendant, plaintiffs appeal.

*W. H. McElwee and W. L. Osteen for Plaintiffs, Appellants.*
*Whicker & Whicker by J. H. Whicker, Sr., for Defendant, Appellee.*

PARKER, J. Plaintiffs state in the beginning of their brief: "The plaintiffs' evidence intended (*sic*) to show false representation on the part of the defendant, that the defendant knew the representation was false at the time it was made and at (*sic*) this representation was made with the intent to induce the plaintiffs to part with their funds for the purpose of defrauding the plaintiffs." These are the closing words of their brief: "If the evidence is to be believed, the statements as to water supply were false. They were made under circumstances which would permit the jury to infer the purpose was to induce the plaintiff to pay more for the property to his detriment. These are some of the inferences which a jury might draw from the evidence."

It is clear that plaintiffs base their action upon fraud. Their evidence makes out no case of breach of warranty. See *Jones v. Furniture Co.,* 222 N.C. 439, 23 S.E. 2d 309, which was an action to recover for an alleged breach of express warranty. In that case the complaint alleged defendant's salesman guaranteed to plaintiffs that a second-hand bed was free of bed bugs; that relying upon said guarantee, plaintiffs purchased the bed; that the bed was infested with bugs; and thereby the warranty was breached. A demurrer *ore tenus* to the complaint was allowed in this Court, on the ground it did not state a cause of action.

"The court cannot submit a case to the jury on a particular theory unless such theory is supported by both the pleadings and the evidence." *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25. This Court said in *McKee v. Lineberger,* 69 N.C. 217, 239: "Proof without allegation is as

ineffective as allegation without proof." A plaintiff cannot make out a case which he has not alleged. *Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911; *Whichard v. Lipe,* 221 N.C. 53, 19 S.E. 2d 14.

A complaint must allege a cause of action by a statement of proper facts. Even under the liberal construction of pleadings required by G.S. 1-151, a court cannot construe into a pleading that which it does not contain. *Jones v. Furniture Co., supra;* McIntosh, North Carolina Practice and Procedure, 2d Ed., Vol. I, p. 555.

No fiduciary or confidential relationship is alleged or shown in the instant case. We have many cases setting forth the essential elements of actionable fraud. One of these elements is that the defendant made the false representation with intention that it should be acted upon by plaintiff, or as otherwise phrased, with intent to deceive. *Stone v. Milling Co.,* 192 N.C. 585, 135 S.E. 449; *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131; *Lamm v. Crumpler,* 240 N.C. 35, 81 S.E. 2d 138; *Early v. Eley,* 243 N.C. 695, 91 S.E. 2d 919.

A pleading setting up fraud must allege the facts relied upon to constitute fraud, and that the alleged false representation was made with intent to deceive plaintiff, or must allege facts from which such intent can be legitimately inferred. *McLane v. Manning,* 60 N.C. 608; *Anderson v. Rainey,* 100 N.C. 321, 5 S.E. 182; *Bank v. Seagroves,* 166 N.C. 608, 82 S.E. 947; *Colt v. Kimball,* 190 N.C. 169, 129 S.E. 406; *Griggs v. Griggs,* 213 N.C. 624, 197 S.E. 165; *Hill v. Snider,* 217 N.C. 437, 8 S.E. 2d 202; *Development Co. v. Bearden,* 227 N.C. 124, 41 S.E. 2d 85; *Davis v. Whitehurst,* 229 N.C. 226, 49 S.E. 2d 394; 37 C.J.S., Fraud, Sections 83-84; 24 Am. Jur., Fraud and Deceit, Section 247.

"It is accepted in this jurisdiction that the facts relied upon to constitute fraud, as well as the fraudulent intent, must be clearly alleged." *Colt v. Kimball, supra.* In *Stone v. Milling Co., supra,* the Court said: "A complaint which failed to allege that the fraud charged against the defendant was intended to injure the plaintiff, was held defective in *Farrar v. Alston,* 12 N.C. 69 . . . A complaint which contains no allegation of a fraudulent intent, or facts from which it may reasonably be inferred, fails to state a cause of action for deceit, and such defect may be taken advantage of by demurrer. *Bryan v. Spruill,* 57 N.C. 27."

It is not alleged in the complaint that the false representations were made by the defendant with intent to deceive the plaintiffs. There is no allegation that the defendant intended such representations to be acted on by the plaintiffs, or that they were made by defendant with the knowledge or expectation that they were to be acted on by plaintiffs. In the complaint there is no averment the representations were fraudulently made, or that they were knowingly false, or that the representations were made with a reckless disregard of their truth or falsity, and with the intent that they be acted on, or that the false statement was

made unqualifiedly by defendant as of her own knowledge and with intent to induce action. In our opinion, there are not sufficient averments of facts in the complaint from which the equivalent of an intent to deceive may be legitimately implied. The complaint fails to allege a case of actionable fraud, and is fatally defective.

Plaintiff J. B. Calloway testified on cross-examination: "I did know when I came over here that the wells were going dry all over this country and the springs were. That is the reason I was so anxious about water to inquire about it. I didn't turn the spigot on and make an investigation because she was so earnest about plenty of water, plenty of water." The volume of water in the well on the premises was a fact that could have been determined by the plaintiffs by the exercise of the slightest diligence on their part by turning on the spigots before the purchase. When the power was off, they could easily have waited until the power was on and turned on the spigots, before consummating the purchase. It was not necessary to measure the water in the well to determine its amount, because shortly after the purchase J. B. Calloway turned on the spigots and found the water shortage. The complaint contains no allegation that plaintiffs were prevented by the artifice of the defendant, or by any act on her part, from making an examination to find out about the water in the well.

This Court said in *Harding v. Ins. Co.*, 218 N.C. 129, 10 S.E. 2d 599: " 'It is generally held that one has no right to rely on representations as to the condition, quality or character of property, or its adaptability to certain uses, where the parties stand on an equal footing and have equal means of knowing the truth. The contrary is true, however, where the parties have not equal knowledge and he to whom the representation is made has no opportunity to examine the property or by fraud is prevented from making an examination.' 12 R.C.L., 384. When the parties deal at arms length and the purchaser has full opportunity to make inquiry but neglects to do so and the seller resorted to no artifice which was reasonably calculated to induce the purchaser to forego investigation action in deceit will not lie. *Cash Register Co. v. Townsend*, 137 N.C. 652; *May v. Loomis*, 140 N.C. 350; *Frey v. Lumber Co.*, 144 N.C. 759; *Tarault v. Seip*, 158 N.C. 369, 23 A.J., 981."

This Court also said in *Keith v. Wilder*, 241 N.C. 672, 86 S.E. 2d 444, after stating the principle of law set forth immediately above: "But the rule is also well established that one to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon. 23 A.J. 970, Restatement Torts, secs. 537, 540."

The right to rely on representations is inseparably connected with the correlative problem of the duty of a representee to use diligence in

respect of representations made to him. The policy of the courts is, on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest.

Plaintiffs knew there was a shortage of water in the wells and springs in that section. With that knowledge, it would seem that the repeated and vague statements of the defendant "plenty of water, plenty of water" would naturally tend to arouse the suspicion of the plaintiffs that the representations were false, and that such representations were not of a character to induce action by a person of ordinary prudence. Under such circumstances the law imposed upon plaintiffs the duty of turning on the spigots, or making some investigation, to find out about the water supply, and failing to do so, they cannot avail themselves of the seller's misrepresentations. 23 Am. Jur., Fraud and Deceit, Section 157; Anno. 61 A.L.R., pp. 513-514; 37 C.J.S., Fraud, Section 31.

In *Hays v. McGinness*, 208 Ga. 547, 67 S.E. 2d 720, the false representations were "that the well on said land (which was the only water supply on said land) would at all seasons of the year furnish a sufficient supply of water for the usual domestic purposes of a family of four; for household use, cooking, drinking, bathing, and laundry and for the maintenance of such livestock as is usual on a small farm of 15 acres, as one cow, one mule, two hogs and 50 chickens." Petitioners showed that a reasonable and adequate supply of water for a household, domestic, and farm purposes for a family of four (including two small children) is from 75 to 100 gallons per day, and that the well did not at any time furnish a supply of water sufficient for domestic and household use, and that the water in said well was seepage water only, and that said well at no time contained more than 30 gallons of water a day. The Syllabus by the Court is as follows: "A sale of land will not be vitiated by false representations of the seller as to the quality or condition of the land, where the purchaser had sufficient opportunity to examine the subject of the representations but made no examination or investigation, and was not prevented from so doing by any artifice of the seller; and where, as here, the representations relate to the volume of water in a well and its daily flow, the purchasers will not be heard to complain, as they were wilfully negligent in not exercising the slightest diligence to ascertain this question themselves, nor do they allege that they were prevented from doing so by any artifice of the seller."

The judgment of compulsory nonsuit entered below is
Affirmed.