STATE PROPERTIES, LLC, Plaintiff v. CALVIN A. RAY, MADELINE C. RAY and the
Estate of BEATRICE B. JONES, Defendants

No. COA02-305

(Filed 31 December 2002)

### 1. Fraud—judgment notwithstanding the verdict—sufficiency of evidence

The trial court improvidently granted defendants' motion for judgment notwithstanding the verdict on a fraud claim arising out of the purchase of real property and the case is remanded to the trial court for reinstatement of the jury's verdict on the fraud claim, because: (1) defendants represented in the contract of sale that the property had not been used as a landfill or for the storage or disposal of hazardous materials; (2) defendants orally misrepresented that nothing had been buried on the property; (3) provisions of the contract of sale required defendants to turn over to plaintiff all pertinent information regarding the property, but evidence revealed that defendants failed to apprise plaintiff of the existence of a Department of Transportation plan showing a debris pond or the Phase I reports indicating potential soil contamination on the outparcel; (4) plaintiff conducted an independent investigation on the property prior to the closing, and plaintiff would have conducted more environmental tests on the outparcel if it had been provided with the Phase I report; and (5) although there was conflicting evidence as to whether plaintiff should have performed soil borings on the outparcel and whether these additional borings would have revealed buried debris and soil contamination, it was for the jury to resolve the conflicting evidence.

### 2. Unfair Trade Practices—judgment notwithstanding the verdict—finding of fraud

Although plaintiff contends the trial court erred by failing to instruct the jury and by granting judgment notwithstanding the verdict on its unfair and deceptive trade practices claim under N.C.G.S. § 75-1.1 arising out of the purchase of real property, this issue does not need to be considered because: (1) the Court of Appeals reinstated the jury's fraud verdict; and (2) a finding of fraud constitutes a violation of N.C.G.S. § 75-1.1.

**3. Contracts—breach—directed verdict—motion for judgment notwithstanding verdict—misrepresentation—nondisclosure**

The trial court did not err by denying defendants' motion for a directed verdict and motion for judgment notwithstanding the verdict on plaintiff's breach of contract claim arising out of the purchase of real property even though defendants contend that plaintiff's knowledge of the buried materials on the property prior to closing is fatal to the allegations of misrepresentation and nondisclosure, because: (1) plaintiffs conducted an independent investigation of the property's condition; and (2) plaintiff presented evidence that defendants violated the provisions of the contract of sale including the requirement of providing plaintiff with all information pertinent to the property and the provision making certain representations and warranties regarding the property.

**4. Damages and Remedies—future damages—breach of contract**

The trial court did not err by failing to reduce the damages award for a breach of contract claim arising out of the purchase of real property even though defendants contend plaintiff failed to prove future damages to a reasonable certainty, because: (1) plaintiff's evidence on damages was not so speculative as to be inadmissible; and (2) plaintiff presented sufficient evidence to provide a basis for the jury's calculation of prospective damages to a reasonable certainty.

Appeal by plaintiff and cross-appeal by defendants Calvin A. Ray and Madeline C. Ray from judgment entered 31 May 2001 by Judge Howard E. Manning, Jr. in Wake County Superior Court. Heard in the Court of Appeals 14 November 2002.

*Herring McBennet Mills & Finkelstein, PLLC, by Mark Anderson Finkelstein and Stephen W. Petersen, for plaintiff.*

*Poyner & Spruill, LLP, by Keith H. Johnson and Timothy P. Sullivan, for defendants Calvin A. Ray and Madeline C. Ray.*

WALKER, Judge.

Defendants Calvin A. Ray and his wife, Madeline C. Ray, (the Rays) owned a tract of land contiguous to another tract owned by

Beatrice B. Jones (Ms. Jones), Madeline Ray's mother. Together, these two tracts totaled 8.77 acres and bordered North Carolina Highway 98 and U.S. Route 1 in Wake Forest. The Rays operated various businesses on their tract of land from the time they acquired title from Ms. Jones in 1966, including Mr. Ray's current grading and paving business, Calvin Ray Asphalt Paving Contractor.

In September 1996, the Rays and Ms. Jones executed a contract of sale with Coharie Market L.L.C. (Coharie) for the two tracts of land described above (the property). The contract of sale contained the following language:

> 5. <u>Surveys, Engineering Data, Development Plans, Building Plans, etc.</u> Subject to reasonable availability Seller at Seller's sole cost and expense, shall deliver to Buyer all surveys, engineering studies, environmental reports, development plans, building plans, special use permits, water and sewer permits and tap-ons, and related data, licenses, permits and information which may be owned by or available to Seller, if any, with respect to the Property . . . .

> . . .

> 8. <u>Seller's Representations and Warranties</u>. Seller makes the following representations and warranties which shall survive the Closing . . . (d) To the best of Seller's knowledge, there are no underground storage tanks on the Property, and no portion of the Property has been used as a landfill or for the production, storage or disposal of any petroleum, petroleum byproduct, natural or synthetic gas, or any regulated substance, waste, pollutant, contaminant, toxic or hazardous materials (collectively, "Hazardous Materials") of any kind as defined under Applicable Laws.

The contract of sale further provided plaintiff with the right to conduct surveys, tests and an environmental audit on the property. The original closing date on the contract of sale was 31 October 1996.

In January 1997, Coharie, the Rays and Ms. Jones executed an amendment to the contract of sale assigning all of Coharie's rights to State Properties, LLC (plaintiff). Plaintiff subsequently executed an agreement with the Rays and Ms. Jones which reaffirmed the representations made in the contract of sale and required defendants to remove all personalty from the property within thirty days of the amended closing date of 15 December 1997 (closing). Plaintiff planned to develop one-half of the property for a Winn-Dixie store

and a parking lot (Winn-Dixie parcel), reserving the remainder (out-parcel) for "future development" and sale. Issues relating to the condition of the outparcel are the subject of this action.

Before the original closing date, Ted Royall (Royall), a managing member of Coharie and of State Properties, inspected the property from his vehicle and observed various "junk" and debris scattered on the property. Royall testified that he inquired about the debris and was informed by Mr. Ray that the debris would be cleaned up and removed.

At one of several meetings with the Rays before the closing, Mrs. Ray showed Royall an article from the *Triangle Business Journal* (*TBJ*) stating that Midland Group had aborted its planned purchase of the property due to "environmental problems" requiring "costly clean-up." Royall testified that Mrs. Ray told him the article was "a lie" because the Rays "had owned the land for such a long period of time and knew that no one had buried anything on the site." The Rays made similar statements indicating that nothing was buried on the property at subsequent meetings with Royall. Royall also contacted the *TBJ* article's author, who admitted that he had no evidence regarding the environmental problems referenced in the article.

In connection with the sale of the property, the Rays provided Royall with a topographical survey and other maps of the property. However, Royall testified that before the closing, the Rays did not give him a North Carolina Department of Transportation road construction plan (D.O.T. plan) showing a "drained pond, debris filled" on the outparcel. He also testified that none of the other maps provided to him showed the "debris pond." Royall testified that, before the closing, the Rays did not provide him with either the Phase I Environmental Assessment (Phase I) performed by ENSCI Environmental, Inc. in 1994 or the Phase I performed by Smith Environmental Technologies Corporation for the Midland Group in 1995, both of which indicated potential surface or subsurface contamination of the property. Furthermore, he testified that he would have conducted additional environmental investigations of the outparcel before the closing if he had been given the ENSCI Phase I report and that he would not have purchased the property if he had been aware of the Smith Phase I report or the D.O.T. plan showing the "debris pond." However, Royall testified on cross-examination that the Rays never encouraged him not to perform surveys and environmental tests on the property.

After the contract of sale was executed in September 1996, plaintiff hired GeoTechnologies, Inc. (GeoTechnologies) to perform a Phase I on the property. As evidence introduced at trial showed, a Phase I involves an examination of environmental records, an interview with the property owner and a visual inspection of the property but does not include any investigation into the property's subsurface conditions.

David Israel (Israel), a GeoTechnologies engineer, testified that he observed old vehicles, appliances, metal drums, concrete debris, asphalt and other material scattered throughout the property when he performed the Phase I for plaintiff. He testified that he did not observe any leaking or staining on the ground around the metal drums. Israel further testified that during the Phase I interview, Mr. Ray told him that he was unaware of any environmental problems on the property and that nothing had been buried there. He also testified that, if the Rays had shown him the D.O.T. plan, he would have recommended soil borings for the outparcel.

The GeoTechnologies Phase I report, dated 10 September 1996, stated that "significant grading activities have occurred on the site in the past which may have partially covered some debris or old waste related problems." However, the report did not recommend any additional environmental testing of the property.

In August 1997, Ed Hearn (Hearn), another engineer with GeoTechnologies, conducted a subsurface investigation and geotechnical study of the Winn-Dixie parcel for plaintiff. A geotechnical study involves taking soil borings and analyzing the composition of subsurface soil and rock to determine whether the property is suitable for and can support a certain structure. Soil borings typically are taken only on property for which a "known structure" is planned.

Some of the soil borings taken by GeoTechnologies on the Winn-Dixie parcel revealed "fill material" and "buried organics" up to depths of five feet. Hearn's report on the geotechnical study stated that the Winn-Dixie parcel was "covered with large amounts of miscellaneous metal, organic, and construction debris." The report further stated that "buried pits containing organic materials and other construction rubble" were found on the Winn-Dixie parcel. The report concluded that subsurface conditions were suitable for the proposed development.

David McPherson (McPherson), the grading foreman, testified that in January 1998, he observed car parts, underground storage

tanks and construction debris on the property. He testified that tires, rims, metal, brush and wire were also visible on the surface of the outparcel at that time. McPherson further testified that while he and a co-worker were clearing the outparcel to lay storm piping, they unearthed debris, tree stumps and metal, which delayed their work. He testified that the buried debris was similar to debris found on or near the surface of the outparcel.

In December 1999, Withers & Ravenel Engineering & Surveying, Inc. (W&R) discovered scrap metal, concrete and asphalt mixed with "organic rich soil" on the outparcel, as well as a motor oil stain under a crushed metal drum while installing subsurface utilities. This discovery prompted W&R to take soil samples on the outparcel, revealing contamination from petroleum and diesel fuel and other contaminants which affected the groundwater. W&R's report of its findings was introduced into evidence.

On cross-examination, Hearn testified that plaintiff did not seek his opinion as to whether a subsurface investigation of the outparcel was advisable. Further, Royall admitted on cross-examination that if 20-foot borings on the outparcel had been performed, plaintiff would have discovered the petroleum contamination prior to closing. Another of plaintiff's experts, Cameron Patterson, testified on cross-examination that he could not be certain that the subsurface debris problem would have been revealed even if soil borings had been taken on the outparcel but admitted it was possible. He also testified that if borings had been performed, they would have revealed the outparcel did not contain native soil.

Robert "Roddy" Jones, one of the principles in plaintiff, was called as an adverse witness by the Rays. He testified that the soil boring on the Winn-Dixie parcel, which showed top soil extending to a depth of five feet, indicated to him something had been buried at the particular location of that boring.

Ben Wilson (Wilson), the Rays' expert, specializing in subsurface environmental investigations, testified that he would have recommended performing one to two soil borings extending fifteen to twenty feet deep on the outparcel based on the presence of a creek near that portion of the property. He further testified that if soil borings had been performed on the outparcel, they would have revealed fill material. Wilson testified that the execution of both the Phase I and geotechnical study by Geotechnologies met the standard of care

for such investigations. He also testified that the W&R report contained insufficient data regarding the extent of the alleged soil contamination because only one to three percent of the excavated materials had been tested for contamination. Wilson testified that the limited scope of the W&R investigation rendered it an inadequate basis for determining the amount of soil and debris that would need to be removed to a landfill for disposal.

Regarding plaintiff's damages claim, Tim Fitzgerald, its witness experienced in construction costs, testified that the total cost related to the discovery of the buried debris and soil contamination on the property amounted to $1,031,501.13. Fitzgerald estimated that $538,749.00 of this total would be incurred in the future for loading, transporting and disposing of the debris and contaminated soil. He also testified that, although the W&R report on soil borings was the primary basis for his cost estimate, he consulted drawings and other documents provided by plaintiff and further verified the estimate with waste disposal experts.

Based on the discovery of buried debris and soil contamination on the outparcel, plaintiff sued defendants for negligent misrepresentation, breach of contract, fraud, unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2001), violation of the North Carolina Oil Pollution Control and Hazardous Substances Act, N.C. Gen. Stat. § 143-215.75-143-215.104U (2001), and punitive damages.

On 16 February 2001, the trial court denied the parties' cross-motions for summary judgment. At the close of plaintiff's evidence, defendants moved for directed verdict on all plaintiff's claims. The trial court entered a directed verdict dismissing all claims against defendant Estate of Beatrice Jones but denied the Rays' motion for a directed verdict. At the close of all evidence, the Rays renewed their motion for a directed verdict, and the trial court dismissed plaintiff's negligent misrepresentation claim. Plaintiff's claim under the North Carolina Oil Pollution Control and Hazardous Substances Act likewise was dismissed.

After denying the plaintiff's request for jury instructions on unfair and deceptive trade practices, the trial court instructed the jury on fraud and breach of contract. On 10 May 2001, the jury returned a verdict for plaintiff and awarded damages in the amount of $304,982.00 for breach of contract. Damages in the amount of $295,971.00 were awarded for the fraud claim. The trial court found the Rays committed unfair and deceptive trade practices based on the jury's finding of

fraud and trebled the fraud damages award under N.C. Gen. Stat. § 75-16 (2001).

On 31 May 2001, the Rays filed a motion for judgment notwithstanding the verdict (JNOV). Following a hearing on this motion, the trial court granted JNOV on the fraud and unfair and deceptive trade practices claims and denied JNOV on the breach of contract claim. Plaintiff appealed and the Rays cross-appealed the order and judgment.

[1] Plaintiff first contends the trial court erred in granting JNOV on its fraud claim because it presented sufficient evidence on each element of fraud to survive a directed verdict motion. The Rays argue, however, that plaintiff failed to present sufficient evidence that it reasonably relied on the Rays' alleged misrepresentations or that it exercised reasonable diligence in its investigation of the property, thus justifying JNOV on the fraud claim.

A motion for JNOV is essentially a renewal of a motion for a directed verdict. *Couch v. Private Diagnostic Clinic*, 133 N.C. App. 93, 515 S.E.2d 30, *aff'd*, 351 N.C. 92, 520 S.E.2d 785 (1999).

> The standard to be employed by a trial judge in determining whether to grant a judgment notwithstanding the verdict is the same standard employed in ruling on a motion for a directed verdict. The judge must consider the evidence in the light most favorable to the nonmovant and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict for the nonmovant. All conflicts in the evidence are to be resolved in the nonmovant's favor, and he must be given the benefit of every inference reasonably to be drawn in his favor.

*Williams v. Jones*, 322 N.C. 42, 47-48, 366 S.E.2d 433, 437 (1988) (citations omitted). If, under this standard, there is more than a scintilla of evidence to support each element of the non-movant's claim, the motion for JNOV should be denied. *Couch, supra.*

It is well-settled that an actionable claim for fraud must include the following elements: " '(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with the intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Helms v. Holland*, 124 N.C. App. 629, 634, 478 S.E.2d 513, 516 (1996) (citation omitted). Additionally, reliance on alleged false representations must be reasonable. *Johnson v. Owens*, 263 N.C. 754, 140 S.E.2d 311 (1965), *C.F.R. Foods,*

*Inc. v. Randolph Development Co.*, 107 N.C. App. 584, 421 S.E.2d 386, *disc. review denied*, 333 N.C. 166, 424 S.E.2d 906 (1992). Reliance is not reasonable if a plaintiff fails to make any independent investigation, *Calloway v. Wyatt*, 246 N.C. 129, 97 S.E.2d 881 (1957), or if plaintiff is informed of the true condition of the property, *Jay Group, Ltd. v. Glasgow*, 139 N.C. App. 595, 534 S.E.2d 233, *disc. review denied*, 353 N.C. 265, 546 S.E.2d 100 (2000). The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion. *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 513 S.E.2d 320 (1999).

Further, this Court has held that, to support a fraud claim, a plaintiff must demonstrate it was denied the opportunity to investigate the property or could not discover the truth about the property's condition by exercise of reasonable diligence. *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 511 S.E.2d 309 (1999). A plaintiff also must show that it was induced to forego additional investigation by the defendant's misrepresentations. *Hearne v. Statesville Lodge No. 687*, 143 N.C. App. 560, 546 S.E.2d 414 (2001).

Plaintiff's evidence tended to show that the Rays lived near the property for a number of years before they acquired title to their tract in 1966. The Rays represented in the contract of sale that the property had not been used as a landfill or for the storage or disposal of hazardous materials. Evidence also showed that the Rays orally misrepresented to Royall and Israel that nothing had been buried on the property. Provisions of the contract of sale further required the Rays to turn over to plaintiff all pertinent information regarding the property. However, additional evidence showed that the Rays failed to apprise plaintiff of the existence of the D.O.T. plan showing a "debris pond" or the Phase I reports indicating potential soil contamination on the outparcel.

Further, plaintiff's evidence showed that it conducted an independent investigation of the property prior to the closing. With respect to plaintiff being induced to forego additional investigation, Royall testified that he would have conducted more environmental tests on the outparcel if he had been provided with the ENSCI Phase I report. Although there was conflicting evidence as to whether plaintiff should have performed soil borings on the outparcel and whether these additional borings would have revealed buried debris and soil contamination, it was for the jury to resolve the conflicting evidence.

In denying the Rays' motion for a directed verdict on the fraud claim at the close of plaintiff's evidence, the trial court noted that the determination as to the reasonableness of plaintiff's reliance and its investigation was an issue for the jury. At the close of all evidence, the trial court again denied the Rays' motion for a directed verdict on the fraud claim, finding that plaintiff had produced sufficient evidence to send the question to the jury. Further, the trial court properly instructed the jury on the elements of fraud as relating to the reasonableness of plaintiff's conduct.

Based on the foregoing evidence, we conclude plaintiff met its burden of producing sufficient evidence to withstand the Rays' motion for a directed verdict. Thus, we hold that the Rays' motion for JNOV was granted improvidently and remand this matter to the trial court for reinstatement of the jury's verdict on the fraud claim.

[2] Plaintiff next argues that the trial court erred in failing to instruct the jury and in granting JNOV on its unfair and deceptive trade practices claim. Our Supreme Court has held that

> N.C.G.S. § 75-1.1 declares unlawful "[u]nfair methods of competition in or affecting commerce." The case law applying Chapter 75 holds that a plaintiff who proves fraud thereby establishes that unfair or deceptive acts have occurred. "Proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts . . . ." If a violation of Chapter 75 is found, treble damages must be awarded.

*Bhatti v. Buckland,* 328 N.C. 240, 243, 400 S.E.2d 440, 442 (1991) (citations omitted). This Court recently held that, in a claim for unfair and deceptive trade practices, "[t]he jury decides whether the defendant has committed the acts complained of. If it finds the alleged acts have been proved, the trial court then determines as a matter of law whether those acts constitute unfair or deceptive practices in or affecting commerce." *Durling v. King,* 146 N.C. App. 483, 487-88, 554 S.E.2d 1, 4 (2001) (citations omitted). Here, we have held that the trial court improvidently granted JNOV on plaintiff's fraud claim and have ordered the reinstatement of the jury's fraud verdict accordingly. Because a finding of fraud constitutes a violation of N.C. Gen. Stat. § 75-1.1, we need not address either plaintiff's contention that it has an independent claim for unfair and deceptive trade practices or that the trial court erred in denying plaintiff's requested jury instruction on that claim.

**[3]** In their cross-appeal, the Rays contend that the trial court erred in denying their motion for a directed verdict and their motion for JNOV on plaintiff's breach of contract claim. In support of this contention, the Rays argue that plaintiff's knowledge of the buried materials on the property prior to closing is fatal to the allegations of misrepresentation and non-disclosure which provide the basis for the breach of contract claim.

The Rays rely primarily on *Calloway v. Wyatt, supra,* to support their contention that plaintiff cannot avail itself of a breach of contract claim premised on the Rays' alleged misrepresentations. In *Calloway,* our Supreme Court held that the buyers could not rely on the seller's alleged misrepresentations because they had failed to make any independent investigation of the property despite evidence which should have aroused their suspicion that the representations were false. *Calloway, supra,* 246 N.C. at 135, 97 S.E.2d at 886; *see also Hearne, supra,* 143 N.C. App. at 562, 546 S.E.2d at 415 (holding that plaintiffs could not rely upon representations when they "failed to make any independent investigation of the property"), *Libby Hill Seafood Restaurants, Inc. v. Owens,* 62 N.C. App. 695, 303 S.E.2d 565 (affirming directed verdict for defendant where plaintiff knew the property had been used as a trash dump but conducted no independent investigations), *disc. review denied,* 309 N.C. 321, 307 S.E.2d 164 (1983).

Here, the contract of sale in paragraph five quoted above requires the Rays to provide to plaintiff all information pertinent to the property. Obviously, the D.O.T. plan showing a "debris pond" and the ENSCI and Smith Phase I reports indicating potential soil contamination on the outparcel, which the Rays did not provide to plaintiff, were pertinent pieces of information about the property.

Also, in paragraph eight of the contract of sale, the Rays made certain representations and warranties regarding the property. There was ample evidence before the jury that the Rays breached this provision of the contract of sale in failing to disclose and in failing to deliver the property as warranted. Although plaintiff had some knowledge prior to closing of debris and fill materials on the property, it conducted an independent investigation of the property's condition, unlike the *Calloway* plaintiffs. Because plaintiff presented evidence that the Rays violated the provisions of the contract of sale, we hold the trial court properly denied the directed verdict and JNOV motions on the breach of contract claim.

**[4]** The Rays further contend the breach of contract damages award should be reduced because plaintiff failed to prove future damages to a reasonable certainty. The Rays argue that plaintiff's witness based his cost projection on speculation.

The party seeking damages bears the burden of proving them in a manner that allows the fact-finder to calculate the amount of damages to a reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E.2d 578 (1987). While the claiming party must present relevant data providing a basis for a reasonable estimate, proof to an absolute mathematical certainty is not required. *Whiteside Estates, Inc. v. Highlands Cove, L.L.C.*, 146 N.C. App. 449, 553 S.E.2d 431 (2001), *disc. review denied*, 356 N.C. 315, 571 S.E.2d 220 (2002). Further, if a party seeks prospective damages arising out of a breach of contract, it may recover without proving the amount to . an absolute certainty, as long as a reasonable showing has been made. *Pipkin v. Thomas & Hill, Inc.*, 298 N.C. 278, 258 S.E.2d 778 (1979). "Challenges to the quality of the data upon which an expert witness based his opinion go to the weight to be accorded that opinion, but are not generally grounds for its exclusion." *Horne v. Roadway Package Systems, Inc.*, 129 N.C. App. 242, 244, 497 S.E.2d 436, 438 (1998) (*citing Rutherford v. Bass Air Conditioning Co.*, 38 N.C. App. 630, 248 S.E.2d 887 (1978), *disc. review denied*, 296 N.C. 586, 254 S.E.2d 34 (1979)).

Plaintiff's witness, Fitzgerald, expressed the opinion that the future cost of disposing of contaminated soil and debris found on the outparcel would amount to $538,749.00. Fitzgerald testified that he based this projection on his experience in past remediations, the W&R report on soil borings revealing significant contamination, consultations with waste disposal experts and drawings and other documents relating to the property provided to him by plaintiff. He also testified that all of the soil in the portion of the outparcel found to be contaminated would need to be removed. The Rays' expert, Wilson, testified that the W&R report did not contain sufficient data to determine how much soil would need to be removed in order to estimate future costs associated with remediation.

The trial court properly instructed the jury that it should weigh the damages evidence introduced by both parties and that plaintiff had the burden of proving damages to a reasonable certainty, not a mathematical certainty. In the original judgment dated 10 May 2001, the trial court noted the jury's close examination of plaintiff's damages evidence and stated that "it is crystal clear and unequivocal

ALLEN v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[155 N.C. App. 77 (2002)]

which items of damage claimed by State Properties, line by line, were awarded on the fraud claim and on the contract claim as well as which items were rejected by the jury in their entirety."

We conclude that plaintiff's evidence on damages was not so speculative to be inadmissible. We further conclude that plaintiff presented sufficient evidence to provide a basis for the jury's calculation of prospective damages to a reasonable certainty. Thus, we hold the trial court did not err in refusing to grant the Rays' motions for a directed verdict and JNOV.

We have carefully reviewed plaintiff's and the Rays' remaining assignments of error and find them to be without merit.

In summary, we reverse the trial court's granting of the Rays' motion for JNOV on the fraud claim. The trial court's amended judgment denying the Rays' motion for JNOV on the breach of contract claim is affirmed. We remand this case to the trial court for reentry of the original judgment entered 10 May 2001.

Affirmed in part, reversed and remanded in part.

Judges McCULLOUGH and TYSON concur.