MARY ELLISON LITTLE AND ROBERT J. ELLISON, PLAINTIFFS V. JACK DOUGLAS STOGNER, INDIVIDUALLY, AND JACK DOUGLAS STOGNER, AS ADMINISTRATOR OF THE ESTATE OF PEGGY W. STOGNER, DEFENDANT

No. COA02-1704

(Filed 6 January 2004)

### 1. Fraud— sale of real property—failure to perk—reasonable reliance on representations

The trial court erred by directing a verdict for defendant on a fraud claim arising from the sale of real property where there was sufficient evidence that defendant knowingly made false representations that the property perked and that existing septic tanks had been grandfathered. These representations were not merely vague indications, but definite representations upon which a reasonable person would rely. Moreover, defendant's assertions induced plaintiffs to accept "as is" terms with no residential disclosure statement.

### 2. Real Property— Residential Property Disclosure Act— remedy

The trial court did not err by dismissing a claim for damages under the Residential Property Disclosure Act. The sole remedy was cancellation of the contract.

### 3. Vendor and Purchaser; Warranties— implied—restrictive covenants—failure of property to perk

The trial court erred by dismissing a claim for breach of implied warranty which arose from the sale of residential property that failed to perk where there was sufficient evidence that the property was not suitable for any conventional, modified, or alternative sewage system and could not be used to construct a residence in compliance with restrictive covenants. The defect was not reasonably discoverable because of defendant's misrepresentations and assurances.

### 4. Fraud— sale of real property—damages

The calculation of damages for fraud in the sale of real property is based upon the difference between the value of the property when the contract was made and the value it would have had without the fraudulent representation.

Appeal by plaintiffs from judgment entered 11 March 2002 and an order entered 14 November 2002 by Judges Robert P. Johnston and J. Gentry Caudill, respectively, in Mecklenburg County Superior Court. Heard in the Court of Appeals 13 October 2003.

*Andresen & Associates, by Christopher M. Vann and John W. Gresham, for plaintiff-appellants.*

*Helms Mulliss & Wicker, P.L.L.C., by Robert A. Muckenfuss, Thomas D. Myrick, and Jill C. Griset, for defendant-appellee.*

HUNTER, Judge.

Mary Ellison Little ("Little") and Robert J. Ellison ("Ellison") (collectively "plaintiffs") appeal from a Directed Verdict and Judgment entered against them filed 11 March 2002 and an order denying plaintiffs' motion for relief from judgment filed 14 November 2002. Plaintiffs also petition this Court for certiorari to review a consent judgment dated 11 June 2002 and an order awarding bond and denying plaintiffs' motion to restore the injunction filed 6 August 2002. We grant plaintiffs' petition for certiorari in order to fully review this appeal. Because the trial court erred in granting a directed verdict against plaintiffs on their fraud claim and in dismissing plaintiffs' breach of implied warranty claim, we reverse in part and vacate the award of costs to defendant. We also vacate the order lifting the preliminary injunction and awarding the injunction bond to defendant. However, we affirm the trial court's dismissal of plaintiffs' claim under the Residential Property Disclosure Act and the exclusion of evidence on the valuation of the property at the time of trial.

The evidence presented at trial tends to show Jack Douglas Stogner ("defendant") sold two lots located on Lake Wylie in Mecklenburg County, North Carolina, to plaintiffs. Defendant on various occasions represented to plaintiffs and others that he had soil tests performed on the property and those tests revealed that the soil "perked," meaning the soil was suitable to support a septic tank system because it could filtrate water at an acceptable rate. In early May 1998, after Little had initially shown interest in buying the property from defendant, defendant called Little and made an appointment for her to view the lots. Defendant walked the property showing Little where the boundaries of the lots corresponded to copies of recorded plats. He informed Little that a lot of soil work had been performed on the property and that the property would "perk." Defendant also told Little that there were two septic tanks and that Mecklenburg

County had "grandfathered" both of the tanks. Defendant also represented that Little could connect houses she planned to build to the septic tanks without the expense of any additional septic system. Defendant reminded Little that her property next to the lots perked, that the next door neighbor's property perked, and that another property down the road also perked, and that his land was the same, he had all the soil work done and there would be no problem with the property. There was also evidence that defendant made similar representations to other potential buyers.

Little and defendant initially entered into a standard form offer to purchase and contract for the property on 1 June 1998. In that standard form contract, however, provisions related to property disclosure and inspections were crossed out. Further, the contract stated Little waived her right to receive a Residential Property Disclosure Statement and that the property was being sold "as is." Little was told by defendant and Malickson, the attorney advising defendant and who performed the closing, that the Residential Property Disclosure Statement only applied to a cabin located on the property, which was going to be removed, and dealt only with termites, chimney inspections, electrical wiring, and lead paint disclosures.

Following the signing of the offer to purchase and contract, Ellison, Little's brother, decided he would join Little in purchasing the lots, and plaintiffs and defendant once again viewed the property. Defendant again pointed out the location of the septic tanks, and reassured plaintiffs that he had performed soil work and the land would perk. Defendant further asserted that he and his wife had once planned to construct a three bedroom house on one of the lots and offered to show plaintiffs the plans assuring them they would have no problem constructing such a house.

At closing, plaintiffs received a general warranty deed for the property and signed a deed of trust to defendant for a portion of the sales price. Subsequently, plaintiffs, while in the process of trying to obtain building permits, were made aware of records in the Mecklenburg County Department of Health that showed soil testing of the property had been performed at the request of defendant and his wife and revealed that the property was not suitable to support septic tank systems and further that the septic tanks in place on the property had not been "grandfathered" in by Mecklenburg County. These records showed that in 1982, prior to defendant acquiring the lot, a site investigation report revealed the soil on one of the lots was unsuitable to support a septic tank system. A letter to defendant's

wife dated 12 February 1993 stated a soil investigation had been conducted at her request on the other lot and showed the property was unsuitable for use with "any conventional, modified or alternative system of which [the investigator] was aware." The records also contained two applications filed by defendant on behalf of his wife dated 23 February 1993, requesting water and wastewater services for the property in order to build a three bedroom home. A subsequent "Soil And Site Report For A Ground Absorption Wastewater System" dated 23 March 1993 listed defendant and his wife as "Owner/Applicant" and stated that defendant was present at the evaluation. This report concluded that the property was unsuitable for a conventional ground absorption wastewater system (a septic tank), and was further unsuitable for either a modified septic tank system or an alternative sewage system.

When confronted by Little, defendant stated that he would only provide the documents from the soil testing after plaintiffs paid off the deed of trust. Plaintiffs purchased the property from defendant for $370,000.00 with the intent of constructing three bedroom homes. An appraisal conducted on behalf of the plaintiffs valued the two lots at $100,000.00 and $140,000.00, respectively.

Plaintiffs brought suit against defendant alleging fraud, breach of implied warranty, and violation of the Residential Property Disclosure Act. Defendant reciprocated by beginning foreclosure proceedings based on non-payment under the deed of trust. The trial court, however, entered a preliminary injunction preventing defendant from proceeding on the foreclosure action during the pendency of this action. See Little v. Stogner, 140 N.C. App. 380, 536 S.E.2d 334 (2000) (dismissing defendant's appeal of the preliminary injunction as interlocutory).

Prior to trial, the trial court dismissed plaintiffs' breach of implied warranty and Residential Property Disclosure Act claims. The case proceeded to trial on plaintiffs' fraud claim, upon which the jury ultimately deadlocked seven to five. The trial court declared a mistrial and entered a directed verdict in favor of defendant on 11 March 2002, which lifted the preliminary injunction. Subsequently, the trial court entered a consent order awarding costs to defendant and later entered its separate order denying plaintiffs' motion to reinstate the preliminary injunction and awarded the injunction bond to defendant.

The issues on appeal are whether: (I) there was evidence sufficient to reach a jury that plaintiffs' reliance on defendant's represen-

tations was reasonable; (II) the Residential Property Disclosure Act provides a cause of action for damages; and (III) the trial court erred in dismissing the breach of implied warranty claim. Defendant raises a single cross-assignment of error: (IV) that the exclusion of testimony on the current value of the property at trial was error.

I.

[1] Plaintiffs first contend the trial court erred in directing a verdict in favor of defendant on the fraud claim. We agree.

"A motion for directed verdict tests the sufficiency of the evidence to take the case to the jury." *Abels v. Renfro Corp.*, 335 N.C. 209, 214, 436 S.E.2d 822, 825 (1993). In ruling on a directed verdict motion, a trial court "must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence." *Id.* at 214-15, 436 S.E.2d at 825. " 'If there is more than a scintilla of evidence supporting each element of the plaintiff's case, the directed verdict motion should be denied.' " *Stamm v. Salomon*, 144 N.C. App. 672, 679, 551 S.E.2d 152, 157 (2001) (quoting *Little v. Matthewson*, 114 N.C. App. 562, 565, 442 S.E.2d 567, 569 (1994)).

The elements of fraud are:

"(a) that defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury."

*Bolick v. Townsend Co.*, 94 N.C. App. 650, 652, 381 S.E.2d 175, 176 (1989) (citations omitted) (emphasis omitted). In this case, there is clearly sufficient evidence, viewed in the light most favorable to plaintiffs, to reach a jury that defendant knowingly made false representations that the property "perked" and was suitable to support a septic system and the septic tanks in place on the property had already been "grandfathered" in by Mecklenburg County. It is plainly apparent that defendant was aware of the fact that soil work had been performed on the property and that this soil work indicated that the property was not suitable to support septic tank systems. Further, these statements were made with the intention of inducing

plaintiffs to purchase the property and that plaintiffs relied on those statements and in fact purchased the property and suffered damages as a result.

The only close question is whether there is sufficient evidence that plaintiffs' reliance on defendant's fraudulent statements was reasonable. *See State Properties, LLC v. Ray*, 155 N.C. App. 65, 72, 574 S.E.2d 180, 186 (2002) (reliance on false statement must be reasonable). "The reasonableness of a party's reliance is a question for the jury, unless the facts are so clear that they support only one conclusion." *Id.* at 73, 574 S.E.2d at 186. It is the policy of our Courts "on the one hand, to suppress fraud and, on the other, not to encourage negligence and inattention to one's own interest." *Calloway v. Wyatt*, 246 N.C. 129, 135, 97 S.E.2d 881, 886 (1957). Thus, generally, where a plaintiff fails to make any independent investigation, reliance on an assertion is deemed unreasonable. *See State Properties, LLC*, 155 N.C. App. at 73, 574 S.E.2d at 186.

Where, however, a defendant has resorted to an "artifice which was reasonably calculated to induce [plaintiffs] to forego investigation," plaintiffs' failure to conduct an independent investigation is not fatal to a claim for fraud. *Calloway*, 246 N.C. at 134, 97 S.E.2d at 885-86. Our Courts have recognized the well established rule in such cases " 'that one to whom a positive and definite representation has been made is entitled to rely on such representation if the representation is of a character to induce action by a person of ordinary prudence, and is reasonably relied upon.' " *Kleinfelter v. Developers, Inc.*, 44 N.C. App. 561, 565, 261 S.E.2d 498, 500 (1980) (quoting *Keith v. Wilder*, 241 N.C. 672, 675, 86 S.E.2d 444, 447 (1955)). Thus in these scenarios, the buyer of property does not "necessarily have to examine the public records to ascertain the truth where the buyer reasonably relies upon representations made by the seller." *Id.* at 565, 261 S.E.2d at 500 (citing *Fox v. Southern Appliances, Inc.*, 264 N.C. 267, 141 S.E.2d 522 (1965)).

In this case, plaintiffs concede that they conducted no independent investigation of the property's suitability to support a septic tank system or whether the existing septic tanks had been "grandfathered" in by Mecklenburg County. Defendant contends that reasonable diligence and inquiry on the part of plaintiffs would have led them to discover the results of the soil testing performed for defendant in the records kept by the Mecklenburg County Health Department, and that plaintiffs had ample opportunity to conduct their own inspection of the property.

**LITTLE v. STOGNER**

[162 N.C. App. 25 (2004)]

The evidence in this case, however, shows that defendant's representations were not merely vague indications that the property would support a septic system, they were instead definite representations that soil work had been performed and the property "perked," and further that the septic tanks already on the property had, in fact, actually been "grandfathered" into compliance. Further, defendant assured plaintiffs that the property would perk and reminded them that Little's property perked as did that belonging to her next door neighbor and other property down the road. Defendant, moreover, indicated that he had planned to build a three bedroom residence on the property similar to those planned by plaintiffs and they would have no problem constructing such residences. This is sufficient evidence for a jury to find that these statements constituted positive and definite representations such that a reasonable person would be justified in relying upon them without inspecting the Health Department records.

Furthermore, when Little met with defendant and Malickson, defendant's attorney, to sign the standard form offer and contract to purchase, portions of the form regarding property disclosures were already crossed out. One of these provisions included the buyer's right to inspect the property including water and sewer systems. This is evidence tending to show defendant was taking steps to prevent an inspection by plaintiffs into the condition of the property, calculated to induce plaintiffs into foregoing their own investigation.

The contract also provided that the buyer was purchasing the property "as is" and was waiving any right to receive a Residential Property Disclosure Statement. Plaintiff was induced into accepting these terms by defendant's and Malickson's assertions that the property disclosure portion of the standard form contract would only apply to a cabin already on the property that was to be removed, and further that the Residential Property Disclosure Statement applied only to lead paint, termites, the condition of the roof and chimney, the foundation, and electrical systems.

The Residential Property Disclosure Act requires that owners of residential real property "shall furnish to a purchaser a residential property disclosure statement." N.C. Gen. Stat. § 47E-4(a) (2001). The owner of property has the option of either (1) disclosing items relative to conditions and characteristics of the property of which the owner has actual knowledge, including, *inter alia*, the water supply and sanitary sewage system, or (2) stating that the owner makes no

representations as to the conditions or characteristics of the property. N.C. Gen. Stat. § 47E-4. In the case *sub judice*, had defendant and his attorney not induced plaintiffs to waive their right to a residential property disclosure statement, defendant would have either been required to (1) truthfully disclose his knowledge that Mecklenburg County had found the property unsuitable to support a septic tank system and had not grandfathered the septic tanks into compliance, or (2) state that he made no representation about the condition of the property relating to sanitary sewer systems. If defendant had chosen the latter, after making the fraudulent representations to plaintiffs and others, it is reasonable to assume that this would have alerted plaintiffs to the potential for fraud causing them to perform an investigation. Thus, it is also reasonable to infer, in light of defendant's actual knowledge of the condition of the property, that defendant's desire not to provide a residential disclosure statement was reasonably calculated to prevent plaintiffs from conducting further investigation and discovering his false representations.

Under the standard for a directed verdict, we conclude that viewed in the light most favorable to plaintiffs and giving them the benefit of every reasonable inference drawn therefrom, this constitutes more than a scintilla of evidence to support the element that plaintiffs reasonably relied on defendant's assertions as, even though plaintiffs conducted no investigation, a jury could reasonably conclude defendant took steps calculated to prevent further investigation and that the representations made were definite and positive statements of such a character that a reasonable person would have foregone any further investigation. Thus, there was sufficient evidence to create a jury question on the issue of reasonable reliance, and the trial court erred in directing a verdict for defendant on the fraud claim.

## II.

[2] Plaintiffs next contend that the trial court erred in dismissing the claim for damages under the Residential Property Disclosure Act. We disagree.

The Residential Property Disclosure Act contained in Chapter 47E of the North Carolina General Statutes, with certain exceptions, applies to sales or exchanges, installment land sales contracts, options, and leases with options to purchase involving transfers of residential real property consisting of between one and four dwelling units. N.C. Gen. Stat. § 47E-1 (2001). Under the Residential Property

Disclosure Act, the owner of residential real estate is required to furnish a disclosure statement to a purchaser of the real estate that either discloses characteristics and conditions of the property, of which the owner has actual knowledge, or states that the owner makes no representations as to the characteristics and condition of the property, except as provided in the real estate contract. N.C. Gen. Stat. § 47E-4. The disclosure statement is to be delivered to the purchaser no later than the time at which the purchaser makes an offer to purchase, exchange, option, or exercises an option to purchase leased property. N.C. Gen. Stat. § 47E-5(a) (2001).

The remedy for an owner's failure to comply with the Residential Property Disclosure Act is provided in Section 47E-5(b), which provides the sole remedy for a violation of the Residential Property Disclosure Act. Under this section, if a disclosure statement is not provided to the purchaser prior to or contemporaneously with the making of an offer, the purchaser has the right to cancel any resulting contract. N.C. Gen. Stat. § 47E-5(b). This right to cancel, however, expires (1) three calendar days from the delivery of a disclosure statement to the purchaser, (2) three calendar days following the date the contract was made, (3) at settlement or occupancy of the property by the purchaser, or (4) at settlement in the case of a lease with option to purchase. *Id.* Accordingly, plaintiffs' sole remedy under the Residential Property Disclosure Act was cancellation of the contract pursuant to Section 47E-5(b), and no separate action for damages under the Residential Property Disclosure Act will lie. Thus, the trial court did not err in dismissing plaintiff's claim for damages under the Residential Property Disclosure Act.

### III.

[3] Plaintiffs also argue that the trial court erred in dismissing their claim for a breach of the implied warranty arising out of the restrictive covenants. We agree.

Our Court's have recognized an implied warranty arising out of restrictive covenants:

"[W]here a grantor conveys land subject to restrictive covenants that limit its use to the construction of a single-family dwelling, and, due to subsequent disclosures, both unknown to and not reasonably discoverable by the grantee before or at the time of conveyance, the property cannot be used by the grantee,

or by any subsequent grantee through mesne conveyance, for the specific purpose to which its use is limited by the restrictive covenants, the [grantor] breaches an implied warranty arising out of said restrictive covenants."

*Balmer v. Nash*, 65 N.C. App. 401, 403, 309 S.E.2d 518, 519-20 (1983) (quoting *Hinson v. Jefferson*, 287 N.C. 422, 435, 215 S.E.2d 102, 111 (1975)). Thus, in order to establish a breach of the implied warranty arising out of the restrictive covenants, a plaintiff must not only show that the property cannot be used for the purpose its use is limited to by the covenant, but also that the fact the property could not be used for that purpose was unknown to the plaintiff and not reasonably discoverable. *Id.*

In this case, restrictive covenants limited the use of the property to single family recreation and/or single family residence purposes and required the grantee to construct and maintain an outside toilet or inside sewage system in compliance with governmental regulations. Plaintiffs produced evidence tending to show that the property was unsuitable for any conventional, modified, or alternative sewage systems to support residential construction. Moreover, although the restrictive covenants permitted the construction of an outside toilet, a separate covenant prohibited "any refuse, garbage, rubbish or waste of any kind [from being] placed upon or allowed to remain" on the lot. Thus, plaintiffs have made a sufficient showing of evidence to support their claim that the property could not be used for the purpose of constructing a residential home in compliance with the restrictive covenants.

Defendant contends that even if the property cannot be used for the purpose of residential construction, the condition of the property was reasonably discoverable and cites *Balmer* as controlling authority. In this case, however, although Little lived next door to defendant's property, the evidence shows that Little's property perked, as did other property with which she was familiar. Furthermore, although the public records showed the property was unsuitable for a septic tank system and that the existing septic tanks had not been "grandfathered" into compliance, we have already concluded that the evidence, taken in the light most favorable to plaintiffs, tends to show that defendant took steps to prevent any investigation through his misrepresentations and assurances. Thus, plaintiffs produced evidence sufficient to show that, because of their reliance on defendant's misrepresentations, it was not reasonable to discover that the

property would not support a septic system sufficient for residential purposes. Therefore, the trial court erred in dismissing plaintiffs' breach of implied warranty claim.

Because we reverse the trial court on both plaintiffs' fraud and breach of implied warranty claims, we vacate the award of costs to defendant. In so doing, we also reverse the lifting of the preliminary injunction and vacate the order denying plaintiffs' motion to reinstate the preliminary injunction and awarding the bond to defendants.

### IV.

[4] Defendant cross-assigns error under Rule 10(d) of the North Carolina Appellate Rules to the trial court's exclusion of expert testimony regarding the current fair market value of the property at the time of trial. Although defendant contends this evidence was generally admissible, he cites no authority to support his position and thus we reject this assignment of error pursuant to N.C.R. App. P. 28(b)(6). Furthermore, we note the calculation of damages in a fraud case is based upon the difference between the actual value of the property at the time of the making of the contract and the value it would have possessed had the fraudulent representation been true, and is not based upon the value of the property at trial. *See Horne v. Cloninger*, 256 N.C. 102, 104, 123 S.E.2d 112, 113 (1961).

Accordingly, we reverse the directed verdict on the plaintiffs' fraud claim and the dismissal of plaintiffs' implied warranty claim; we affirm the trial court's dismissal of plaintiffs' claims under the Residential Property Disclosure Act; and vacate the consent judgment awarding costs to defendant and the orders lifting the preliminary injunction and awarding bond.

Reversed in part, affirmed in part, vacated in part.

Chief Judge EAGLES and Judge GEER concur.